TAYLOR and others *v.* THE PHILADELPHIA & READING R. Co.*

FARMERS' & MECHANICS' NAT. BANK OF PHILADELPHIA *v.* SAME.

*(Circuit Court, E. D. Pennsylvania.* January 21, 1881.)

1. EQUITY—CORPORATION IN HANDS OF RECEIVERS—WHAT MATTERS NOT WITHIN JURISDICTION OF COURT—ANNUAL MEETING OF STOCKHOLDERS.

As the object of the appointment of receivers of a railroad is to preserve the property for the benefit of creditors, the court has no other function to exercise than that which will assist in carrying out this object.

2. SAME.

The court will not, upon the petition of the company filed in the suit in which receivers were appointed, take jurisdiction of and decide a question as to the propriety of postponing a meeting called for the election of officers, which question has no relation to the objects for which the receivers were appointed.

*Reported by Frank P. Prichard, Esq , of the Philadelphia bar.

Petition by a railroad company then in the hands of receivers, presented to the court which had appointed the receivers, and setting forth that owing to an accidental mistake a call issued for the annual meeting of stockholders for the election of officers was inconsistent with the by-laws, and that owing to the temporary absence of the president on business for the company and to other reasons it was desirable to postpone the holding of such meeting. The petitioners prayed for leave to withdraw the call for the meeting, and to hold such meeting after the return of the president, at a day to be fixed by the court. The petition was referred to special masters, before whom it was opposed by certain shareholders. The masters reported as follows:

"The only averments upon which jurisdiction is predicated are contained in the first, second, and eleventh paragraphs of the petition. In substance they are:

"That your honorable court has appointed receivers of the property and franchises of the railroad company, who are now in the full exercise of their office, and that the company has been restrained from interfering with the management of the property by the receivers; that the duties imposed by the charter of the company upon its officers, as to the care and mangement of the corporate property, must necessarily be discharged, if discharged at all, in subordination to the receivers; and that the action of the company, in electing officers, may be made the subject of direction of the court.

"It is also averred (paragraph 1) that leave has been granted 'to any person in interest to apply for further directions.' This is true. Such leave was included in the decree of May 24, 1880, by which, upon the bill filed by Moses Taylor, the receivers were appointed. But leave to apply does not predetermine that every application which shall be made in pursuance thereof will be sustained, or that the subject of every such application will be within the jurisdiction of the court in the cause to which the leave relates. This is self-evident, and therefore the only subject, which upon this point is worthy of discussion, is as to whether the jurisdiction now asserted has really any existence.

"It has been argued by the counsel for the petitioners that this subject has been already substantially passed upon by the court, and is consequently now beyond propriety of question by us. If we could agree with them that the court has decided the matter, we of course would adopt their conclusion, and would not undertake to discuss the correctness of the decision; but we do not think that the court has made any such adjudication. This position of counsel for petitioners has been based by them upon the contention that the decree of May 24, 1880, under which the receivers were appointed, made them receivers of all the franchises of the corporation, as well as of its property, and that subsequent orders, which have empowered and directed the officers of the railroad company to

do certain things, show that the court has assumed the control and direction of the exercise of all the corporate powers.

" The bill did not pray for the appointment of receivers of the corporate franchises of the company, but only of its property, ' with such power and authority in regard to the preservation and use of the same as to the court shall seem best adapted to protect and promote the interests of all persons having any interest therein.' The decree does, in terms, appoint receivers of the ' property, privileges, franchises, and powers.' It was not sought by the bill to erect the receivers into a corporation, nor to devolve upon them all the franchises of the railroad company, including its franchise to be a corporation, and so to dissolve or extinguish the corporate existence of the latter. We do not think that it was intended to extend the decree in this particular beyond the prayer of the bill. In both it seems to have been remembered that to make the appointment of the receivers of any use, and their possession of the property available, it was requisite that they should be allowed to exercise such of the franchises of the corporation as would be necessary for the operation of its ' property,' and the realization of income therefrom ; and for this reason, and with this intent only, as we think, the words ' privileges, franchises, and powers' were added. This construction of the decree is, in our opinion, necessary to its support in point of law, and is in harmony with its final clause, which orders an injunction against the railroad company to restrain them, not from performing any and every corporate act, but only from such acts as would interfere with the receivers in *managing the property.*

" We conclude that the court did not, by this decree, either vest in the receivers, or take under its own immediate control, all the franchises of the railroad company, but merely conferred upon the receivers the right to exercise such of them, to the exclusion of the company and its officers, as are incident to the possession and management of the property of the corporation ; and that the franchises which relate solely to the existence of the corporate body, and the maintenance and control of its organization, (as the holding of its annual meetings and the election of its officers,) continue undisturbed in the corporation itself, and in its stockholders and board of managers.

" The subsequent orders of the court, to which reference has been made, and by which certain directions have been given to the officers of the railroad company, do not conflict, in our judgment, with the conclusion to which we have above arrived. They have all been *ex parte*. No person has appeared to oppose them. No question was made as to their propriety, and we do not think that there can be any reasonable doubt that they were properly made upon the applications which induced them. The order of June 9, 1880, is the most general one, and it is that which has been most particularly referred to before us. It may be taken as a sample of all of them. By it the officers of the company were empowered and directed, when requested by the receivers and authorized by the masters, to make such deeds, contracts, bonds, bills, notes, or other instruments of writing as shall be necessary in the conduct of the business of the corporation. This is not at all inconsistent with the retention

by the corporation and its officers of the possession and control of all of its franchises, the exercise of which would not conflict with the receivers in the performance of their duties. The order clearly recognizes that the corporation still continues to exist, and the permission which it grants to the officers of the corporation is applicable only when action is requested by the receivers. It refers to a class of acts which would, or — as is quite sufficient for the present purpose—which might affect the administration by the receivers of the property in their hands. It was, we believe, intended merely to facilitate their management and use of that property, and we think it would require a very strained construction of this or of any similar order of the court to enable us to hold that they either affirmed that the court had previously assumed the control of all the corporate franchises, or that it intended to do so in making such orders.

"It was further argued, however, that, apart from the language of the decree of May 24, 1880, and of the subsequent orders, the effect of such a decree as was made is, upon any interpretation of it, to put the court in control of all the franchises of the corporation, and therefore to draw to itself a directory jurisdiction with respect to every subsequent corporate act. These proceedings have been instituted upon the mortgage dated December 1, 1876, known as the income mortgage, and upon the mortgage dated July 1, 1874, known as the general mortgage. Each of these mortgages includes franchises of the company, by a clause substantially the same, being the franchises ' connected with or relating to the aforesaid railroads, other premises, or any of them;' that is to say, connected with or relating to the property mortgaged. The statute of Pennsylvania of April 8, 1861, (Purdon's Digest, 290, pl. 49,) and its supplements, were referred to, as showing that, upon a sale under these mortgages, the franchises would pass, and it was thence argued that receivers appointed under the same mortgages, pending proceedings for foreclosure, must hold the same franchises which, upon sale, would vest in the purchaser. The law authorized the mortgage of franchises, but to make the pledge of them subtantially available to the pledgee it was necessary that the law should do something more ; that it should provide some means by which, upon the pledge being enforced by sale, a corporation composed of the purchasers might be called into being for the enjoyment of those franchises. No provision whatever has been made for divesting the corporation mortgagor of its franchises and vesting them in the mortgagee, or in any other person or persons, except by, and not until after, a sale under the mortgage. Until that time, at least, the original corporation continues to exist, and to be in possession of its franchise to be a corporation, and it cannot be dissolved or extinguished except by legislative action, constitutionally taken, or by the judgment or decree of a court of competent jurisdiction, entered in pursuance of proceedings duly instituted to that end. Moreover, an examination of the Pennsylvania statutes, before referred to, shows that the corporation, for the existence and organization of which they provide, is to be a *new* corporation ; *its* franchise to *exist* is, therefore, derived from those statutes, and not from the charter of the original company, although from the latter

the new corporate body takes, with the property of the old corporation, all franchises which had been conferred upon it, which affect or relate to the enjoyment of that property.

" It was earnestly urged upon us, that inasmuch as an injunction against the company had ordered it and its officers to do no act which would interfere with the receivers, that therefore it was entirely proper that the board of managers, being in doubt as to their right, in view of that injunction to perform certain acts, should apply to the court from which the writ had issued for leave and instruction ; and upon this ground, also, the claim of jurisdiction in the court was stro gly pressed. In this connection our attention was called to the fact that the petition does not aver that the permission of the court, which is now asked, is necessary, but merely that it is proper that it should be obtained. We do not think that this application has been improperly made ; but what should be done by the court is a different question. The court may either grant or refuse the authorization for which it is asked, but it may also decline to to act at all upon the application; and if we are right in thinking that it is without jurisdiction, the latter, in our opinion, would be the proper course. Although the petition is, in form , that of a party under injunction, asking leave to do that which, if done without such leave, he alleges might subject him to punishment for contempt, we cannot shut our eyes to the fact that a serious conflict is at the bottom of the matter, and that the court, in granting the leave asked, would be virtually deciding a contested question of great magnitude and importance. Therefore it is that we think the court should not, if of opinion that the thing proposed to be done would not be transgressive of the injunction, grant leave to do it as a thing indifferent, but should, for the reason that the contemplated act is not affected by the injunction, wholly abstain from making any order with respect to it.

" We are of opinion that the petition should be dismissed."

*Thomas Hart, Jr., John G. Johnson*, and *James E. Gowen*, for petitioners.

*John J. McCook, Ashbel Green*, and *John C. Bullitt*, for opposing shareholders.

McKENNAN, C. J., *(orally.)* In the present condition of my mind I must refuse this application. The custody of the property of this railroad devolves upon the receivers appointed by the court. They are custodians of it for the benefit of the creditors. As the object of the whole proceeding is the preservation of the property for the benefit of the creditors, I do not think the court has any other function to exercise than that which will assist in carrying out the object to which I have referred, nor do I think that the court should stretch its power beyond that, however desirable it might be

for the court to do so. The receivers must take care of the property—do what is absolutely necessary to preserve it for the benefit of the creditors; and I am unable to see that the power which the court is asked to exercise is pertinent to any such purpose, and, therefore, without stating any more in detail the reasons which have led me to that conclusion, it is sufficient for me to say that such is the impression I have now, and I must refuse the application.

Petition refused.