**In the Matter of the BETTINGER COR-PORATION, Debtor.**

**No. 1019–60.**

United States District Court
D. Massachusetts.

Aug. 7, 1961.

274

Sidney Kagan, Daniel Needham, Jr., co-trustee, Boston, Mass., for co-trustees.

James St. Clair, Hale & Dorr, Boston, Mass., for Walker Mfg. Co.

JULIAN, District Judge.

The trustees of the Bettinger Corporation have filed a petition invoking the summary jurisdiction of this Court for an order adjudging that certain "secret techniques, formulae, inventions and processes conceived or developed by the debtor relating to the ceramic coating of automotive parts are assets of the debtor," (for convenience referred to as the Bettinger process), and for a preliminary injunction restraining Walker Manufacturing Company from using the Bettinger process or making it available to others.

Walker, a Delaware corporation having a principal place of business in Racine, Wisconsin, and presently using the Bettinger process at its Racine plant, contends that this Court lacks summary jurisdiction over the subject matter of the trustees' petition and therefore cannot adjudicate the trustees' claims in a summary proceeding.

No personal service of process has been made on Walker.

A hearing was held on July 27 and 28, 1961, on Walker's objection to the Court's jurisdiction and on the trustees' application for a preliminary injunction. Evidence was presented and briefs submitted on behalf of the trustees and Walker.

On November 28, 1960, Bettinger filed a petition for an arrangement under Chapter 11 of the Bankruptcy Act. Schedule B attached to the petition and purporting to be a statement of all the property owned by Bettinger, listed as Bettinger's principal intangible asset its " 'know-how' in the ceramic industry." On November 30, 1960, an order was entered by the Referee appointing receivers and authorizing and empowering Bettinger, as debtor-in-possession, to operate its business and manage its properties under the supervision of the receivers. The order further provided as follows:

"4. That * * * the said Debtor-in-Possession shall have full power and authority, until the further order of the Court:

* * * * * *

"b. To buy and sell merchandise supplies and other property in its normal and usual course of business.

* * * * * *

"7. That all persons, firms, and corporations, their agents and attorneys, be and they hereby are enjoined and restrained from instituting or prosecuting or continuing the prosecution of any actions, suits or proceedings, at law or in equity, against the debtor, and from levying any attachment, executions or

writs or processes upon the debtor or any of its assets or properties, *or from taking or attempting to take into their possession any of the assets or properties of the debtor, or from doing any act or thing which may interfere with the possession or the management of the Debtor-in-Possession until further order of this Court."* (Emphasis added.)

On March 13, 1961, the petition for an arrangement under Chapter 11 was amended to the present proceeding for the reorganization of the debtor under Chapter 10 of the Bankruptcy Act.

It appears from the evidence introduced at the hearing that on November 28, 1960, when the Chapter 11 petition was filed, and before that date, Bettinger was the owner and exclusive user of an elaborate secret process for the ceramic coating of automobile mufflers and tail-pipes. Walker was and still is the manufacturer of mufflers and tail-pipes for American Motors, a large producer of automobiles. Since June 1960 Bettinger has devoted the entire production capacity of its plant at Toledo, Ohio, to the ceramic coating of mufflers and tail-pipes for Walker. These have run into the hundreds of thousands of units. Mass production which began in June 1960 was preceded by about ten months of extensive research and experimentation by Bettinger in the development of satisfactory formulas, processes, and production methods for the ceramic coating of mufflers and tail-pipes. The complex structure of the interior of the muffler presented difficult obstacles to ceramic coating on a mass production basis. In perfecting the Bettinger process as applied to mufflers Walker co-operated with Bettinger in determining the location and size of perforations in the muffler necessary to meet the requirements of the Bettinger process without impairing the desired acoustical efficiency of the muffler.

On August 18, 1960, Walker and Bettinger entered into a "Product Development Agreement" relating to automotive parts made of, or coated with, ceramic materials. The provisions now pertinent are as follows:

"(2) *Research and Developmental Services.*

"Bettinger hereby agrees to render research and developmental services to assist Walker in a product development program aimed at the establishment of a product line of ceramic automotive parts. In connection with such services, Bettinger shall forthwith and continuously throughout the term of this agreement utilize and make unconditionally available to Walker its skills having possible application to the manufacture of ceramic automotive parts, including without limitation, information as to ceramic materials, ceramic techniques, methods, ingredients and all other scientific, engineering or other data of technical or economic value. Bettinger shall also assist Walker in connection with the various technical aspects relating to devising and improving upon processes for the manufacture of ceramic automotive parts including furnishing Walker with names of possible suppliers of raw material and equipment, engineering and development services and assistance in devising and establishing successful operation of facilities for the manufacture of ceramic automotive parts, and all other things necessary to enable Walker to manufacture for its own account. * * *

"(3) *Ownership of Developments.*

"Bettinger covenants and warrants that any developments applicable to the manufacture of ceramic automotive parts including, but without limitation, products, patents, inventions, techniques, discoveries, methods, processes, formulae, ingredients, engineering and other data, which are conceived, designed or otherwise developed as a result of the work performed under this development contract shall be the property of Walker absolutely, and Walker

shall file, as it elects, United States and foreign patent applications relating thereto at its own expense, Bettinger agreeing to execute any and all documents necessary to perfect such rights in Walker, and to direct its own employees or contractors to execute such documents as may be necessary to perfect such rights in Walker. Bettinger shall have the non-exclusive right without payment of royalty to use any of said developments, subject to the terms of this agreement. Upon and after the termination of this agreement, Bettinger however shall have the right to use or license the use of ceramic technology embodied in any of said developments described in this paragraph but not including the design of the products.

\*     \*     \*     \*     \*     \*

"(14) *Financial Inability*.

"In the event of a voluntary or involuntary filing of a petition in bankruptcy, assignment for the benefit of creditors, or any act of insolvency by Bettinger, the payments specified in paragraph (8) (b) and (8) (c) hereof to be paid by Walker to Bettinger shall each be reduced by fifty percent. However, Walker shall have the right, to elect, on notice of thirty days and within six months after the happening of any act by Bettinger which makes it doubtful that Bettinger has the financial ability to continue active research in the manufacture of ceramic automotive parts to pay Bettinger $25,000 and thereby terminate this agreement."

With reference to the above-quoted paragraph (3) of the agreement, it does not appear that any developments were made after the execution of the agreement that changed the Bettinger process in any substantial way.

In January 1961, while the petition filed under Chapter 11 was pending, and the Referee's order in effect, Walker retained a consulting engineer who had been recently in the employ of Bettinger to make a detailed and accurate study of the Bettinger process and plant in Toledo in order to enable Walker to construct and operate its own ceramic coating plant utilizing the Bettinger process. The consultant went to the Bettinger plant and carried out his assignment with the knowledge and consent of at least one subordinate officer of the debtor. Late in January 1961, he submitted a report to Walker entitled "Description of Bettinger Toledo Production Facilities for Ceramic Coating of Mufflers and Tailpipes." On the cover, above and below this title, appears the phrase, "Locked Drawer Information." The report contained a complete and detailed description of the Bettinger process and plant. After receiving the consultant's report, Walker began the construction of a ceramic coating plant in Racine, Wisconsin, for the utilization of the process thus obtained from Bettinger.

About February 28, 1961, Walker notified Bettinger of its election to terminate the "Product Development Agreement" of August 18, 1960, pursuant to the provisions of paragraph (14). Late in March 1961, Walker, pursuant to the same paragraph, mailed a check for $25,000 to the trustees. The check was deposited by the trustees to their account late in June.

About July 5, 1961, Walker notified Bettinger that beginning July 17, 1961, the ceramic coating of all Walker mufflers and tail-pipes would be done at Walker's newly constructed plant in Racine.

The plant has in fact been completed and was put into operation a few weeks ago. Walker is presently using the Bettinger process at its plant and intends to continue to use it.

Walker did not possess sufficient knowledge of the Bettinger process to be able to put it into operation or to exploit it until the consulting engineer submitted his report in January 1961.

■ On the basis of the evidence before me I find that the Bettinger process is property; that the right to use it is property; that the Bettinger process is

an intangible asset of substantial value; that it was owned by and was under the exclusive control of the debtor on November 28, 1960, when the petition under Chapter 11 was filed.

Walker claims that it has the right to use the process by virtue of the terms of the agreement of August 18, 1960.

Section 111 of the Bankruptcy Act, 11 U.S.C.A. § 511, (Chapter 10), provides that

"the court in which a petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its property, wherever located."

Section 311 of the Act, (Chapter 11), 11 U.S.C.A. § 711, contains substantially the same provision.

In Wasserman v. Driscoll, 1 Cir., 1960, 282 F.2d 502, 506, the Court stated:

"But there is a countervailing principle that a bankruptcy court has summary jurisdiction to determine whether or not the property concerned is in its actual or constructive possession, and if it is in such possession the bankruptcy court has summary jursidiction to decide the various claims to it."

In Thompson v. Magnolia Petroleum Co., 1940, 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876, the Supreme Court said:

"Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt at the time of filing the petition in bankruptcy."

In Matter of Schoenberg, 2 Cir., 1934, 70 F.2d 321, 322, the Court states the rule as follows:

"As to property within the actual or constructive possession of the bankrupt, a court of bankruptcy can determine in a summary proceeding controversies involving adverse claims of title, but, when possession is held by a third person, adverse claims may not be summarily adjudicated unless by consent or unless the claim is merely colorable. These principles are so well established as scarcely to need citation of authority."

I hold that the Bettinger process is property and that it was in the exclusive control and constructive possession of Bettinger at the time the petition under Chapter 11 was filed.

Upon the filing of the petition, the property came under the jurisdiction and control of this Court even though the debtor was left in possession.

Furthermore, paragraph 7 of the Referee's order expressly enjoined and restrained all persons, their agents and attorneys from taking into their possession any of the assets or properties of the debtor until further order of this Court. The order covered not only the tangible assets of the debtor but the intangible assets as well. To construe the order as applicable only to tangible property would be to defeat in part the clear intent and purpose of the order read as a whole.

This Court therefore has summary jurisdiction over the subject matter of the trustees' petition and has the power to decide in a summary proceeding the conflicting claims of the trustees and Walker over the ownership and use of the Bettinger process.

Walker had no right to take over the use of the Bettinger process without the permission of this Court. It made no attempt to submit its claim to adjudication by the Court but chose instead to have recourse to self-help and to run the risk of colliding with the Court's control of the assets of the debtor-in-possession.

To permit claimants to take through self-help assets of a debtor-in-possession to which they believe they are entitled but which have come under the control of the Court, would render impossible the orderly administration of the Bankrupt·

cy Act and would imperil the rights of the remaining creditors.

This Court has the power to use its injunctive powers to protect its jurisdiction and its control over the assets of a debtor-in-possession and to prevent the use or exploitation of an asset which appears to have been taken from such debtor without authority.

The protection of this Court's jurisdiction and control over the Bettinger process, a substantial asset of the debtor, requires the issuance of a preliminary injunction pending the determination of the trustees' petition on the merits.

The requirement of Rule 65(c) of the Rules of Civil Procedure, 28 U. S.C.A., that no restraining order or injunction shall issue except upon the giving of security by the applicant, is inapplicable to the case before me. Dealtry v. Posse School, Inc., 1 Cir., 1938, 100 F.2d 470, 473; In re Hudzinski, D.C. W.D.Pa.1949, 85 F.Supp. 341; see In re Lustron Corp., 7 Cir., 1950, 184 F.2d 789, 797.

It is therefore ordered:

1. That beginning Monday, August 14, 1961, and until the further order of this Court, Walker Manufacturing Company, its officers, agents, employees, and all persons acting under its authority or control, be and they are hereby restrained and enjoined from in any way making use of data or information relating to the Bettinger process of coating automotive parts with ceramic materials, including, without limitation, techniques, formulas, inventions, processes, and other data relating to said process.

2. That beginning forthwith and until the further order of this Court, Walker Manufacturing Company, its officers, agents, employees, and all persons acting under its authority or control, be and they are hereby restrained and enjoined from in any way disclosing or making available to others data or information relating to the Bettinger process of coat-

ing automotive parts with ceramic materials, including, without limitation, techniques, formulas, inventions, processes, and other data relating to said process.