Gene **ROBERTSON** et al., Appellants,

v.

**STATE** of Texas ex rel. **William H. CLEMENT** et al., Appellees.

No. 16752.

Court of Civil Appeals of Texas.

Fort Worth.

July 15, 1966.

Rehearing Denied Sept. 16, 1966.

R. Marvin Pierce, and Eugene Sherrod, Jr., Wichita Falls, for appellants.

Carrington, Johnson & Stephens, Paul Carrington, Hubert D. Johnson and Gene L. McCoy, Dallas, Don Denbow, Asst. County Atty., Spence, Martin & Richie, Short & Smith, and Donald E. Short, Wichita Falls, for appellees.

Amicus curiæ brief by: Texas Bankers Ass'n, and Sam Kimberlin, Jr., Executive Vice President and Leonard Passmore, Counsel & Secretary, Austin.

## OPINION

LANGDON, Justice.

The sole question presented by this appeal is whether or not the trial court erred in ruling that Art. 2.29D of the Texas Business Corporation Act, amended in 1961 and effective June 1, 1964, V.A.T.S., providing for cumulative voting of directors, was applicable to and governed the election of relators as directors of the Burkburnett (State) Bank.

Being of the opinion it did, we reverse and render.

Section D of Article 2.29 of the Texas Business Corporation Act, hereinafter referred to as the T.B.C.A. as amended in 1961, reads as follows: "D. (1) At each election for directors every shareholder entitled to vote at such election shall have the right to vote, in person or by proxy, the number of shares owned by him for as many persons as there are directors to be elected and for whose election he has a right to vote, or unless expressly prohibited by the articles of incorporation to cumulate his votes by giving one candidate as many votes as the number of such directors multiplied by his shares shall equal or by distributing such votes on the same principle among any number of such candidates.

"	*	*	*	*	*	*

"(3) Any shareholder who intends to cumulate his votes as herein authorized shall give written notice of such intention to the secretary of the corporation on or before the day preceding the election at which such shareholder intends to cumulate his votes. As amended Acts 1957, 55th Leg., p. 111, ch. 54, § 4A; Acts 1961, 57th Leg., p. 893, ch. 393, § 1."

The annual stockholders' meeting of the Burkburnett Bank was held on January 12, 1966, for election of its officers, including seven directors. It is undisputed that prior to the meeting all prerequisites of Art. 2.29 D(3) T.B.C.A., supra, relative to notice of intention to vote cumulatively, were timely and properly given by relators and that neither the articles of association nor the by-laws of the Bank expressly prohibit cumulative voting.

Upon receipt of relators' notice of intent to vote their stock cumulatively, the President of the Bank telephoned the office of the State Banking Commissioner in Austin for advice. The Chief Departmental Examiner of the Department advised him that the Banking Commissioner had made consistent rulings that cumulative voting of shares in the election of directors in state banks is not permissible. Thereafter, the State Banking Commissioner, J. M. Falkner, wrote the Bank President confirming the previous advice in his letter stated, "Through certain knowledge, there has never been an Attorney General's opinion rendered with respect to the provisions of Article 2, Chapter IV of the Banking Code." That the interpretation of such provision on the part of his department was that a shareholder of a state bank was entitled to one vote for each share of stock standing in his name and that this policy had prevailed for more than thirty-five years.

At the time of the meeting, January 12, 1966, nine persons were nominated as directors, the last two of which were relators. As the voting proceeded the first seven nominees were elected directors by a majority vote. Five received 6685 votes each. Two received 6850 votes each. The total vote represented one vote for each share voted of the 10,000 shares of stock outstanding. At this point one of the relators attempted to vote cumulatively, approximately 2635 shares of stock, either owned or held as proxy by him, in behalf of himself and the other relator. He had not voted any of such shares for the first seven nominees. On the cumulative basis the 2635 shares times seven, the number of directors to be elected, would amount to an aggregate of 18,445 votes of which 9223 were cast for Clement and 9222 for Gray, the relators.

The chairman of the meeting, acting upon the advice previously received from the State Banking Commission, declared the relator to be out of order in attempting to cumulate his vote.

The election was contested by quo warranto proceedings. Both sides filed motions for summary judgment and submitted the case upon agreed stipulations and affidavits. By its ruling the trial court unseated two of the seven directors otherwise elected by the majority shareholders.

Article 9.14, T.B.C.A., "To What Corporations This Act Applies; Procedure for Adoption of Act by Existing Corporations," contains the following provision: "A. *This Act does not apply to domestic corporations organized for the purpose of operating banks,* (emphasis ours) trust companies, building and loan associations or companies, \* \* \* provided, however, that if any of said excepted domestic corporations were heretofore or are hereafter organized under special statutes which contain no provisions in regard to some of the matters provided for in this Act, \* \* \* or if such special statutes specifically provide that the general laws for incorporation or for the granting of a certificate of authority to transact business in this State, as the case may be, shall supplement the provisions of such statutes, then the provisions of this Act shall apply to the extent that they are not inconsistent with the provisions of such special statutes. As amended Acts 1959, 56th Leg., p. 224, ch. 132, § 1."

The special statutes which govern state banks, rather than containing "no provisions in regard to \* \* \*," contain specific provisions pertaining to the election of directors which in our opinion control over the general provisions of the T.B.C.A. We find no authority or basis by which effect can be given to the provisions of the latter act as a supplement to a subject specifically covered by the Texas Banking Code. There is no provision in the latter act authorizing cumulative voting in the election of direc-

tors. Such method of voting is inconsistent with and repugnant to the provisions in the Texas Banking Code pertaining to the election of directors.

Article 16, § 16, of the Texas Constitution, Vernon's Ann.St., requires the Legislature, by general laws, to authorize the incorporation of corporate bodies with banking and discounting privileges and to provide for state supervision, regulation and control thereof. The first sentence of the Texas Banking Code of 1943, hereinafter referred to as T.B.C., Article 342–101, Ch. 1, Title 16, V.A.T.S., reads as follows: "Scope of Act—Short Title. *This code provides a complete system of laws governing the organization, operation, supervision and liquidation of state banks,* (emphasis ours) and to the extent indicated by the context, governing private banks and national banks domiciled in this State; as authorized by Article 16, Section 16 of the Constitution of the State of Texas, and as provided by Article 3, Section 43 of the Constitution of the State of Texas."

As amended, Acts 1959, 56th Legislature, p. 894, Ch. 412, § 4, Article 342–402 of the T.B.C. pertaining to "Stockholders' Meetings—Quorum—Voting," provides, "The stockholders of each State bank shall hold one regular meeting each year at the time prescribed in its by-laws, and such special meetings as may be deemed necessary after notice as prescribed in the by-laws. * * * *Each stockholder of record shall be entitled to one (1) vote for each share of stock owned by him,* which he may cast in person or by proxy duly authorized in writing filed among the records of the bank. * * * " (Emphasis ours.) Article 342–406 T.B.C. styled, "Directors' Election—Term—Failure to Elect—Vacancy—Failure to Fill Vacancy," reads: "Each State bank shall, at its regular annual meeting of stockholders, or at some adjournment thereof, or at a special meeting of stockholders called for such purpose, elect directors who shall serve until

the next regular annual meeting of stockholders and until their successors have been elected and have qualified. * * * "

In our effort to ascertain legislative intent as expressed by the provisions of the various statutes involved we are influenced by the following facts:

The incorporation of corporate bodies with banking and discounting privileges and the creation of private business corporations encompass law dealing with chartered institutions which are distinctly different. The difference is recognized by the Texas Constitution wherein Art. 16, § 16, supra, directs the legislature by general laws to authorize incorporation of state banks whereas private or business corporations stem from Art. 12, §§ 1 and 2 of the Texas Constitution. The Texas Legislature recognized this difference when it enacted into law the Texas Business Corporation Act and the Texas Banking Code, separate sets of rules to govern each type of corporation.

Art. 9.14, T.B.C.A., supra, previously discussed, specifically states that it does not apply to corporations organized for the purpose of operating banks. The Miscellaneous Corporation Laws Act Art. 1302–1.03, Vernon's Ann.Civ.St., provides: "A. All corporations shall, to the extent not inconsistent with any special statute pertaining to a particular corporation, be governed (1) by the Texas Business Corporation Act, as amended, if organized for profit * * *."

Article 342—101, supra, of the Texas Banking Code reads: "This code provides a *complete system* (emphasis ours) of laws governing the organization, operation, supervision and liquidation of state banks * * *." "Complete" used in this sense is synonymous with "total". It encompasses all details. The rules and provisions are whole, entire, full—having all parts or elements. There is no lack or defect. Since the Banking Code is "complete"

within itself there is no cause to supplement its provisions with those of a separate act which are inconsistent with the specific provision of the Texas Banking Code which governs the voting rights of shareholders and the casting of votes in the election of directors. The Texas Banking Code of 1943 does not provide that the general law shall supplement its provisions. The privileges and powers conferred by the Texas Banking Code are subject only to the right of the legislature to amend, alter or reform it.

Article 342—302 of the T.B.C., under the heading "Legislative Control" provides, "The rights, privileges and powers conferred by this Code are held subject to the right of the Legislature to amend, alter or reform the same. Acts 1943, 48th Leg., p. 137, ch. 97, subch. III, art. 2." The last section of Art. 342—301 of T.B.C. provides that "A state bank shall have all incidental powers necessary to exercise its specific powers"; Art. 342—901 provides, "All state banks are hereby declared to be charged with the public interest and *shall be* (emphasis ours) under state control and be subject to such legislation as *may be enacted for the regulation of such banking institutions"*. (Emphasis ours.)

It would appear obvious from the above quoted provisions that the Legislature did not intend to amend the Texas Banking Code by the indirect method of supplementing it with the provisions of the T.B.C.A. It specifically reserved the right in the Code itself to amend, alter or reform it by direct means. This intent was further emphasized by the provision, "subject to such legislation as may be enacted for the regulation of such banking institutions."

Surely the Legislature has in plain words with clear meaning spelled out its intent that the operation of state banks shall be controlled by the "complete" provisions of the Texas Banking Code, subject to such future legislation as may be enacted by it for the "regulation of such banking institutions."

■ The right of cumulative voting for directors does not exist at common law. It must have been conferred, if at all, by an operative constitutional or statutory provision.

■ Since the Texas Banking Code is specific as to the right of a shareholder of a bank to vote in the election of directors and the method of exercising that right, it operates to the exclusion of the general provision of the T.B.C.A., which defines the voting rights and method of exercising that right in the election of directors generally.

■ The Texas Business Corporation Act was enacted in 1955. It contained approximately the same provisions for cumulative voting then as are now again effective since June of 1964. Such provisions were twice amended in the interim period. It appears to us that had the Legislature intended to provide cumulative voting for state banks it would have enacted legislation providing therefor in 1961 when it amended the T.B.C.A. or subsequent thereto when it amended provisions of the T.B.C. without any alteration or change in the voting rights or methods presently prescribed. This is of particular significance in view of the fact that both the cumulative voting provisions of the T.B.C.A. and the provisions of the T.B.C. relating to the election of directors have been amended a number of times since the Banking Commissioner first made known its interpretation of such voting rights and the Legislature has declined to employ language in any of the amendments which can be interpreted as overriding the Commissioner's interpretation.

Former Chief Justice Cureton of the Texas Supreme Court, in the case of Shaw v. Strong, 128 Tex. 65, 96 S.W.2d 276 (1936), involving an administrative determination by the Texas Banking Commissioner, stated on page 281 of 96 S.W.2d, "In such a case our proper course is to follow the departmental construction, unless

that interpretation is clearly erroneous or unsound. 39 Texas Jur. p. 234, §§ 125, 126." See 53 Tex.Jur.2d p. 257, § 176, which provides: "The contemporaneous, or practical, construction of an act, or, in other words, the construction put on a statute soon after its enactment by those who are charged with the duty of its enforcement, that is, executive and administrative officers and departments, as well as by the courts and the legislature, is worthy of serious consideration as an aid to interpretation, particularly where this construction has been sanctioned by long acquiescence." Section 178, at page 266, of the same text provides, "And the fact that an act is carried forward and incorporated in a revision may be treated as a legislative interpretation that the act has not been abrogated or repealed." Again in the same text at page 267, § 179, it is stated, "In the construction of an act or provision that has been amended, reenacted, or restated, the circumstance that the original statutory language has been modified, or that it has been preserved unchanged, in certain particulars, may be taken into consideration, as an aid to the ascertainment of the legislative intent." Further, in the same text at page 269, § 180, it is stated: "A construction placed on a statute by administrative officers is presumed to be correct, especially where it was contemporaneous, or nearly so, with the statute itself. And legislative acquiescence in the construction given a statute may be presumed from protracted failure to amend or change it." Section 181 at page 270 of the same text provides: "The language of a statute is presumed to have been selected and used with care and deliberation. Every word or phrase is presumed to have been used intentionally, with a meaning and purpose, especially when the language consists of an adopted phrase, or bears evidence of having been chosen with care, or is a phrase of long and frequent usage in the same connection or others involving a similar principle of construction. Where the statutory language is plain and unambiguous, and ex-

presses a single definite and sensible meaning, it is conclusively presumed that the legislature intended to convey that meaning. In such a case, it is further presumed that if the legislature had not intended an expression to convey its plain meaning it would have said so, or would have used a different term, and would not have left the matter entirely to implication." Again, in Section 182, pp. 272 and 273, of the same text, it is stated: "Nor will it be presumed that the legislature intended to make any change in existing law or the settled policy of the state, beyond what it explicitly declares in express terms or by unmistakable implication. * * * Where a statute is reenacted or revised, without any substantial change in its verbiage, it is presumed that the legislature intended it to be given the same construction as that previously given the original act by the courts or by officers charged with its administration."

State of Ohio ex rel. Kearns v. Rindsfoos, 161 Ohio St. 60, 118 N.E.2d 138, 43 A.L.R. 2d 1316 (1954), involves a quo warranto proceeding almost identical to this case. It was based on a refusal to permit cumulative voting on the part of a shareholder in the election of directors in an Ohio State Bank. There, as here, the General Corporation Act and the Banking Act provide that "each shareholder shall be entitled to one vote for each share" except in Ohio there was added the provision, "unless the articles of incorporation otherwise provided." In Ohio, as in Texas, a subsequent provision in the General Corporation Act specifically authorized cumulative voting but a similar provision did not appear in the Banking Code. Cumulative voting was not prohibited by the Code. It was silent on the matter. The Ohio banking code provided that the bank, created under its provisions, should select its directors in the same manner as provided for corporations organized under the general laws of Ohio, in so far as same were not inconsistent with the provisions of the Banking Code. The Ohio court held that the silence of the Banking Code with re-

spect to cumulative voting was inconsistent with the General Corporation Act. That the Banking Code contained specific provisions, complete in themselves, governing the voting rights of shareholders in the election of directors and that such provisions did not include authorization of cumulative voting. The Ohio case is reported in 43 A.L.R.2d 1316. See also pages 1317, 1328 of the same text, and 8 Tex.Jur.2d 354, § 151 and authorities cited therein. " * * * the existence or nonexistence of a particular intent may be inferred from the fact that an act does not contain a certain provision." 53 Tex. Jur.2d 194, § 131.

The judgment of the trial court is reversed and judgment here rendered in behalf of the appellants.