**VALLEY INTERNATIONAL PROPERTIES, INC., Appellant,**

v.

**LOS CAMPEONES, INC., Appellee.**

**No. 1300.**

Court of Civil Appeals of Texas, Corpus Christi.

June 15, 1978.

Rehearing Denied June 26, 1978.

Joel W. Ellis, Carter & Ellis, Harlingen, Rhett G. Campbell, Houston, for appellant.

Joel W. Cook, Schlanger, Cook, Cohn & Mills, Richard L. Fuqua, Haines, Cowgill, Andell & Fuqua, Houston, for appellee.

## OPINION

YOUNG, Justice.

Los Campeones, Inc. filed a petition on July 25, 1977, in the district court of Cameron County seeking relief under Tex.Bus. Corp.Act Ann. art. 2.24 B (Supp.1978) which provides for a court of competent jurisdiction to summarily compel an annual shareholders' meeting upon application of any shareholder where no annual meeting has been held within the prior thirteen months. Valley International Properties, Inc., was named in the petition as defendant. Los Campeones is the majority shareholder of V.I.P.

On that same day (July 25) the trial court granted an ex parte order ordering, among other things, the requested shareholders' meeting to be held on September 2. Then, on August 11 V.I.P. filed its answer which sought a hearing to set aside the July 25th order. The trial court set and conducted a hearing without a jury and thereafter, on September 7, rendered judgment, among other things, upholding its prior order and resetting the shareholders' meeting for September 26. V.I.P. appeals from the September 26th order.

Appellant brings forward four points of error. In those points appellant contends: 1) that the trial court was without jurisdiction of this matter because V.I.P. was engaged in a Chapter XI, 11 U.S.C.A. § 701 et seq. (1970), Bankruptcy Proceeding at the time Los Campeones filed suit; 2) that Los Campeones could not compel a meeting because it was not a shareholder of record, because Los Campeones had a defective title to its V.I.P. shares in that it received its stock in a sale which violated the 1933 Securities Act, 15 U.S.C.A. §§ 77a et seq. (1971), because Brownsville Savings & Loan Association, the prior owner of the V.I.P. shares now held by Los Campeones, breached an agreement with V.I.P., and because Brownsville defrauded V.I.P. in certain loan agreements. V.I.P. also contends (3 and 4) that the trial court erred in excluding and admitting certain evidence.

Los Campeones asserts by cross-point and by motions to dismiss the appeal that this court has no jurisdiction of an appeal from a Tex.Bus.Corp.Act Ann. art. 2.24 B (Supp. 1978) proceeding. We overrule all of the contentions of the parties and affirm the judgment of the trial court.

The background of this case involves an embittered struggle between the management and stockholders of V.I.P. to gain managerial control. V.I.P. is a corporation owning various country club and golf course facilities in Cameron County, Texas. In order to finance the purchase and construction of its facilities and property, V.I.P. borrowed substantial amounts from Brownsville Savings at some time prior to

1973. Subsequently, on September 24, 1973, Brownsville Savings in conjunction with Mutual Savings Association of Fort Worth and Abilene Savings Association issued a 3.9 million dollar permanent loan commitment to V.I.P. provided it performed certain conditions. The commitment was to be funded September 24, 1976. In December of 1974 V.I.P. shareholders pledged a majority of V.I.P.'s outstanding shares to Brownsville Savings in order to secure the previously mentioned loans.

Sometime in early 1976, it became apparent to V.I.P. and Brownsville Savings that V.I.P. would be unable to pay off its debts as they became due. As a result, the loans were renegotiated and extended. As a further means of insuring the continuing viability of V.I.P., Bill Bass, president of V.I.P., began organizing a limited partnership, Los Conquistadores, which would be used to inject 1.6 million dollars of additionally needed capital into the V.I.P. operations. By June of 1976, Los Conquistadores allegedly had raised $800,000 and still needed to raise an additional $800,000. Bass then purportedly presented the limited partnership idea to Brownsville Savings' president, Thomas Pope, and other officers at a meeting on June 25, 1976. During this meeting, the Brownsville officers stated that they wanted no part of the limited partnership but that they would consider other alternatives for helping Bass inject additional capital into the V.I.P. operations. These alternatives were presented to Brownsville Savings in a written memorandum on June 28, 1976. On July 1, 1976, Pope, on behalf of Brownsville Savings, responded to the memo by agreeing to release the V.I.P. stock in its possession in return for Bass' agreeing to assign a $98,661.00 promissory note to Brownsville Savings. V.I.P. contends Brownsville Savings knew in July that without payment of the 3.9 million dollar commitment due on September 24, 1976, the limited partnership would be unable to secure the additional $800,000 required and thus would fail. But Robert Knowles an officer of Brownsville Savings in 1976, and later president, denied these allegations.

On September 24, 1976, Brownsville Savings refused to fund the 3.9 million dollar commitment because of the failure of V.I.P. to meet certain conditions in the loan commitment; i. e., failure to have the property free of liens and failure to issue a plat as required. The principals of Los Conquistadores then refused to further fund the $800,000, and Bass was unable to secure the $98,661.00 promissory note which he was going to assign to Brownsville Savings in order to secure a release of the pledged V.I.P. stock.

In November of 1976, Bass informed Brownsville Savings that he could not make his payments on the prior debt, whereupon Brownsville Savings accelerated maturities of its outstanding loans to V.I.P. In addition, on November 9, 1976, Brownsville Savings formed Los Campeones, Inc., appellee herein, for the purpose of taking over operations of V.I.P. Pat Stanford was hired as agent for Brownsville Savings to operate Los Campeones and the V.I.P. operations it was assuming. Los Campeones operated the golf course and country club facilities during parts of November and December of 1976.

On December 7, 1976, V.I.P. filed for Chapter XI Bankruptcy. The Federal Bankruptcy Judge then appointed a receiver for V.I.P. In March of 1977, V.I.P.'s unsecured creditors voted on and approved the arrangement plan submitted by V.I.P., and on May 10, 1977, the Bankruptcy Judge entered an order confirming the plan. Subsequently, on May 18, 1977, the Bankruptcy Judge entered an order allowing Brownsville Savings to foreclose on the V.I.P.'s shares in its possession. On June 6, 1977, Pat Stanford's employment with Brownsville Savings terminated. On June 7, 1977, Sanford, representing Los Campeones, purchased all of the V.I.P. shares possessed by Brownsville Savings at a public foreclosure sale.

■ All of which brings us to a consideration of the merits of this appeal. No findings of fact and conclusions of law were filed nor were any requested. Appellant

has brought forward a statement of facts and therefore we must presume that the trial judge found every fact necessary to sustain the judgment, provided such facts are raised by the pleadings and are supported by the evidence. *Bishop v. Bishop*, 359 S.W.2d 869 (Tex.Sup.1962); *Texas Construction Associates, Inc. v. Balli*, 558 S.W.2d 513 (Tex.Civ.App.—Corpus Christi 1977, no writ).

Appellant's first point of error asserts that the district court lacked subject matter jurisdiction to enter an order compelling an annual shareholders' meeting under Tex. Bus.Corp.Act Ann. art. 2.24 B (Supp.1978) in that the article is unconstitutional as applied to appellant because the Federal Bankruptcy Court had exclusive and paramount jurisdiction over the appellant's cooperative affairs and because Rule 11–44 (U.S.C.A. Bankruptcy Rules, 1975, pamphlet edition) stayed state court proceedings against appellant.

■ An overview of the jurisdictional provisions of Chapter XI is set forth in *In re Breinig*, 40 F.Supp. 29 (E.D.Penn.1941). Generally speaking under Chapter XI, the Bankruptcy Court has exclusive jurisdiction of the debtor and his property, wherever located. *Chapter X* of the Bankruptcy Act, 11 U.S.C.A. § 511 (1970) contains substantially the same provision. *In re Bettinger Corporation*, 197 F.Supp. 273 (D.Mass.1961). The Bankruptcy Court does not have jurisdiction, though, over all suits brought against the *Chapter XI* debtor. 8 Collier on Bankruptcy ¶ 3.01[2] (14th ed. 1974), *Evarts v. Eloy Gin Corp.*, 204 F.2d 712, 716 (9th Cir. 1953), cert. denied, 346 U.S. 876, 74 S.Ct. 129, 98 L.Ed. 384 (1953), See *In re Prudence Bonds Corporation*, 75 F.2d 262 (2nd Cir. 1935).

Much of the precedent which we find relevant to the scope of the Bankruptcy Court's jurisdiction over suits to compel shareholder meetings is found not only in cases dealing with the jurisdiction of Chapter XI proceedings but also in Chapter X, 11 U.S.C.A. §§ 501 et seq. (1970), reorganization cases. Chapter X and Chapter XI represent the two corporate rehabilitation provisions of the Bankruptcy Act. *Securities and Exchange Commission v. American Trailer Rentals Co.*, 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965); *In re Texas Consumer Finance Corp.*, 480 F.2d 1261 (5th Cir. 1973). A more detailed explanation of the background and interrelationship of Chapters X and XI can be found in *American Trailer*, supra, and *Texas Consumer Finance*, supra.

■ In that regard, a Chapter X *reorganization* provides for extensive jurisdictional and judicial control over the proceedings and administration of a corporation, while a Chapter XI *arrangement* is intended to provide a quick efficient method of implementing a composition among the debtor's general creditors with minimal court involvement. *American Trailer*, supra, *T-Anchor Corp. v. Travarillo Associates*, 529 S.W.2d 622 (Tex.Civ.App.—Amarillo 1975, no writ). Moreover, *Breinieg*, supra, points out that certain provisions of Chapters I–VII, 11 U.S.C.A. §§ 1 et seq. (1966) are also applicable to the jurisdiction of a Chapter XI case. 8 Collier on Bankruptcy ¶ 3.10, 3.11 (14th ed. 1974). The jurisdiction of a Chapter XI Bankruptcy Court is somewhat broader, however, than that under Chapters I–VII. *Pocono Racing Management Association, Inc. v. Banks*, 434 F.Supp. 507, 509 (M.D.Pa. 1977); *1 Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co.*, 400 F.Supp. 280 (N.D.Ga.1975); 8 Collier on Bankruptcy ¶ 3.01 (14th ed. 1974).

Appellant contends in its brief that pendency of an arrangement proceeding precludes a state court from adjudicating any matter which might touch upon affairs of the corporate debtor without first obtaining the approval of the Bankruptcy Court. In sum, appellant argues that the instant suit to compel a shareholder's meeting is tantamount to a suit to oust current management, and that the potential result would indeed interfere with the arrangement debtors' affairs and the Bankruptcy Court's jurisdiction. We do not agree with this conclusion.

The mere pendency of a Chapter XI proceeding does not divest a state court of jurisdiction. *Fitch v. Jones,* 441 S.W.2d 187, 188 (Tex.Sup.1969). A state claim must interfere with the jurisdiction of the Bankruptcy Court in order to preclude a state court's jurisdiction. *In re Wisconsin Cent. Ry. Co.,* 94 F.Supp. 165, 167 (D.Minn. 1950). See *International Shoe Co. v. Pinkus,* 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318 (1929); *In re Bush Terminal Co.,* 78 F.2d 662, 665 (2nd Cir. 1935), Cert. denied 299 U.S. 596, 57 S.Ct. 189, 81 L.Ed. 440 (1936); *Northeastern Real Estate Securities Corporation v. Goldstein,* 276 N.Y. 64, 11 N.E.2d 354 (1937), (cited with approval in *Fitch,* supra); 8 C.J.S. Bankruptcy § 143 (1962). Compare 6 Collier on Bankruptcy ¶ 3.09 n. 18 (14th ed. 1977).

The Bankruptcy Court has no jurisdiction over the meetings of stockholders of the debtor. *In re J. P. Linahan, Inc.,* 111 F.2d 590 (2nd Cir. 1940); *In re Wisconsin Cent. Ry. Co.,* supra; see also *Taylor v. Philadelphia & Reading R. Co.,* 7 F. 381 (C.C.E.D.Pa.1881). A Bankruptcy Court though, does have the power to enjoin a shareholders' meeting which will interfere with the administration of the debtors' estate. *In re Public Service Holding Corp.,* 141 F.2d 425 (2nd Cir. 1944); *Fitch,* supra; 6 Collier on Bankruptcy ¶ 8.15 (14th ed. 1977). In the instant case, there is no evidence that the court-appointed receiver, or any other party, sought an injunction or order staying the holding of an annual shareholders' meeting. Indeed, the Bankruptcy Judge signed an order approving the holding of a shareholders' meeting. Furthermore, the mere fact that an election and possible installation of new directors might ultimately have had some indirect effect on the arrangement does not confer jurisdiction on the Bankruptcy Court. *In re Bush Terminal Co.,* supra; *In re New York and Worcester Express, Inc.,* 294 F.Supp. 1163 (S.D.N.Y.1968). Accordingly, we find the state court had jurisdiction of this matter.

Because we have concluded that the Bankruptcy Court did not have jurisdiction over this suit to compel a shareholders' meeting, and because we construe the scope of Rule 11–44 to be in accord with the substantive provisions of Chapter XI, we find that the automatic rule 11–44 stay of the Chapter XI proceeding did not preclude the district court's order. *Mid-Jersey National Bank v. Fidelity-Mortgage Investors,* 518 F.2d 640 (3rd Cir. 1975). See also *Matter of Cuba Electric and Furniture Corporation,* 430 F.Supp. 689 (D.Puerto Rico 1977); *Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co.,* 400 F.Supp. 280, 284 (N.D.Ga. 1975). Appellant's first point is overruled.

Appellant's second point first contends that the trial court erred in compelling an annual shareholder's meeting under Article 2.24 B because Los Campeones failed to register its stock with V.I.P. in accordance with the requirements of Tex.Bus. & Comm.Code Ann. § 8.207(a) (1968) and in accordance with the corporate bylaws of V.I.P.

The current provisions of Article 2.24 B provide in pertinent part:

". . . If the annual meeting is not held within any 13-month period, any court of competent jurisdiction in the county in which the principal office of the corporation is located may, on the application of any shareholder, summarily order a meeting to be held. . . ."

V.I.P. then directs us to Tex.Bus. & Comm.Code Ann. § 8.207(a) (1968), which provides in pertinent part:

"Prior to due present for registration of transfer of a security in registered form the issuer . . . may treat the registered owner as the person exclusively entitled to vote, to receive notifications and otherwise to exercise all the rights and powers of an owner."

Article III Section 1 of the V.I.P. bylaws contains a similar provision. Appellant, further asserts that the evidence is undisputed that Los Campeones failed to present its stock for registration to V.I.P. In effect, V.I.P. argues that if an issuer may treat an unregistered shareholder as having no power to exercise the rights and powers

of an owner, then the court under Article 2.24 B must treat an unregistered shareholder as having no rights to seek an annual shareholders' meeting. V.I.P. further argues that the accepted meaning of the term "shareholder" comports with Tex.Bus. & Comm.Code Ann. § 8.207(a) (1968) and actually means "shareholder of record," citing *Mead Corporation v. Commissioner of International Revenue,* 116 F.2d 187, 191 (3rd Cir. 1940). We do not agree with these assertions for several reasons.

■■■ First, Section 8.207(a) deals only with the relationship between the issuer and the shareholder. It makes no provision for a court's treating the unregistered shareholder in the same manner. Compare *Gallup v. Caldwell,* 120 F.2d 90, 94 (3rd Cir. 1941). Second, in an analogous situation, unregistered shareholders are said to have a protectable property interest which entitles them to sue on behalf of the corporation regardless of their lack of record status. *In re Pittsburg & L. E. R. Co., Etc.,* 543 F.2d 1058 (3rd Cir. 1976); 13 Fletcher's Cyclopedia of the Laws of Private Corporations §§ 5976, 5979 (1970), 12 Id. § 5507 (1971). Similarly, Los Campeones has a protectable property interest. *Cooper v. Citizens Nat. Bank of Waco,* 267 S.W.2d 848 (Tex.Civ. App.—Waco 1954, writ ref'd n. r. e.); *Greenspun v. Greenspun,* 194 S.W.2d 134 (Tex.Civ.App.—Fort Worth), aff'd 145 Tex. 374, 198 S.W.2d 82 (1946). And it should be able to protect that interest by demanding an annual shareholders' meeting regardless of its ability or desire to vote. Third, in *Mead Corporation v. Commissioner of Internal Revenue,* 116 F.2d 187 (3rd Cir. 1940), cited by appellant for the proposition that "shareholder" means shareholder of record, the term "shareholder" there defined was derived from a specific tax law provision rather than from common usage. The plain meaning of the term "shareholder" is one who owns a share of corporate stock. *Applications of Friedman,* 184 Misc. 639, 54 N.Y.S.2d 45 (1945). Fourth, it is fundamental that a statute should be construed as a whole, and that all of its parts be harmonized if possible. *Trawalter v. Schaefer,* 142 Tex. 521, 179 S.W.2d 765 (1944); *Turul-*

*lols v. San Felipe Country Club,* 458 S.W.2d 206 (Tex.Civ.App.—San Antonio 1970, writ ref'd n. r. e.). Every word or phrase is presumed to have been used intentionally, with a meaning and purpose. *Robertson v. State,* 406 S.W.2d 90 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n. r. e.).

■■ In looking at the entire Business Corporation Act we find that if the Legislature had intended the word "shareholder" in Article 2.24 B to mean "shareholder of record," it would have provided that the shareholder be one "of record" as it did in Article 2.25. 53 Tex.Jur.2d, Statutes §§ 160, 181 (1964). See *HFG Co. v. Pioneer Pub. Co.,* 162 F.2d 536, 540 (7th Cir. 1947). Finally, this Court's interpretation of the word "shareholder" comports with the purpose of the registration requirement. The requirement that shares be registered is intended for the protection of the corporation so that it may know who is entitled to vote, receive dividends, and otherwise participate in other managerial functions. 12 Fletcher Cyclopedia of Law of Private Corporations § 5489 (1971). See also *Kerr v. Tyler Guaranty State Bank,* 283 S.W. 601 (Tex.Civ.App.—Austin 1926, no writ). Under Article 2.24 B, however, the court intervenes to determine the status of a purported shareholder, and the protections provided by a registration requirement are not necessary.

Further in its second point V.I.P. asserts that the trial court erred in ordering the meeting under Article 2.24 B because Los Campeones possessed a defective title to the shares; i.· e., that it was not a legitimate shareholder because: 1) the foreclosure sale violated § 5 of the Securities Act of 1933, 15 U.S.C.A. § 77e (1971); 2) the evidence shows Brownsville Savings breached its agreement to release the pledged shares to their rightful owners; and 3) Brownsville Savings and Los Campeones engaged in a scheme and artifice whereby they fraudulently obtained the V.I.P. shares.

■■■ About the general contention that Los Campeones possessed a defective title to its shares, we need not consider the mer-

its of this point of error because no pleadings were presented to the trial court concerning this defense nor was the matter brought to the court's attention when setting out the issues before the court for decision. See *State of California Department of Mental Hygiene v. Bank of the Southwest National Association,* 163 Tex. 314, 354 S.W.2d 576 (1962); *Smith v. Davis,* 453 S.W.2d 340 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n. r. e.); *Blackmon v. Stanley,* 265 S.W.2d 695 (Tex.Civ.App.—Eastland 1954, no writ); 3 Tex.Jur.2d Rev. Appeal & Error § 98 (1974).

There are additional reasons why we must overrule this phase of the second point. V.I.P.'s contention that the foreclosure sale violated the 1933 Securities Act was never pled nor presented to the trial court; indeed, at trial defense counsel denied that the legality of the foreclosure was in issue.

As to V.I.P.'s assertion that Brownsville Savings breached its agreement to release the V.I.P. shares, even considering this contention on its merits, we find there is sufficient evidence to support the trial judge's implied finding that there was no breach of contract in that Bass did not meet all the conditions required for Brownsville Savings to release the pledged shares. Relative to the assertion by V.I.P. of fraud, that defense as used in this case is an affirmative defense. Tex.R.Civ.P. 94. Here the defense was waived by V.I.P.'s failure to plead it or have it acted on by the trial court. *Petroleum Anchor Equipment, Inc. v. Tyra,* 419 S.W.2d 829 (Tex.Sup.1967); *Parliament Insurance Company v. L.B. Foster Co.,* 533 S.W.2d 43, 50 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.). Furthermore, even if V.I.P. had properly plead and preserved this contention, we find there was sufficient evidence to support the court's implied conclusion that V.I.P. did not meet its burden in proving that Brownsville Savings defrauded V.I.P. Appellant's second point is overruled.

In V.I.P.'s third point it alleges that the trial court erred in refusing to permit V.I.P.'s counsel to review court exhibits 1 through 4, 6 and 7, and in refusing to admit exhibits 1 and 4 into evidence. Pursuant to a subpoena duces tecum Robert Knowles was ordered to deliver to the court Brownsville Savings' correspondence file relevant to Los Campeones. The Court reviewed seven documents and admitted court exhibit number 5 into evidence. The rest were considered privileged information and V.I.P.'s counsel was not permitted to review them. The privilege was claimed under Tex.Rev.Civ.Stat.Ann. art. 852a § 3.07 (1964), which provides in pertinent part:

"The books and records pertaining to the accounts and loans of members shall be kept confidential by the Commissioner, his examiners and representatives, except when disclosure thereof shall be compelled by a court of competent jurisdiction, and no member or other person shall have access to the books and records . . . except upon express action and authority of the board of directors."

V.I.P. submits that the language of Section 3.07 quoted above does not apply to correspondence, but only to books and records of a more formal nature. We disagree. Sections 3.07 also provides:

"Every member shall have the right to inspect such books and records of an association as pertain to his loan, Permanent Reserves Funds Stock or savings Account."

In construing statutes every word or phrase is presumed to have been used intentionally, with a meaning and purpose. *Robertson,* supra. We do not think the Legislature intended to eliminate correspondence from the phrase "books and records", and thereby prevent members from inspecting their own correspondence.

V.I.P. also asserts that Section 3.07 does not apply to litigants of a formal lawsuit but is meant to apply to the "Commissioner, his examiners and representatives". The clear language of the statute refutes this contention in stating "no member or *other person* shall have access to the books and records . . . ."

█ V.I.P. further maintains that Section 3.07 provides that a court of competent jurisdiction may order disclosure of the correspondence herein, and that the subpoena duces tecum was tantamount to such an order. Rule 167, T.R.C.P., pertaining to the production of documents, provides a party shall only produce such documents as are "not privileged". We hold that these documents were privileged and V.I.P.'s counsel did not have a right to view them.

█ V.I.P. also appears to complain that Section 3.07 does not preclude the admission into evidence of such undisclosed communications where they are material to the suit. A provision similar to Article 852a § 3.07; i. e., Article 1136a–9 (parts of which are now in Article 852a § 11.18), was interpreted to preclude the discoverability of certain reports in *Falkner v. Gibraltar Savings Association*, 348 S.W.2d 472 (Tex.Civ.App.—Austin 1961, writ ref'd n. r. e.). See also *Benson v. San Antonio Savings Association*, 374 S.W.2d 423 (Tex.Sup.1963). We agree with these decisions and find Section 3.07 confers a privilege upon which a trial court may exclude certain evidence. V.I.P.'s third point is overruled.

█ V.I.P. complains in its fourth point that the trial court erred in permitting the witness Knowles to testify, over objection, concerning Bill Bass' statement about an audit report because such testimony was hearsay as to the report. We need not consider the merits of this contention in that without findings of fact and conclusions of law we presume the trial judge disregarded evidence which might have been improperly received. *Gray v. Bird*, 380 S.W.2d 908 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.). See also *Yzaguirre v. State*, 427 S.W.2d 687 (Tex.Civ.App.—Corpus Christi 1968, no writ); 4 Tex.Jur.2d Rev. Appeal & Error § 720 n. 17 (1974). V.I.P.'s fourth point is overruled.

█ Los Campeones by cross-point argues that the "summary" nature of an Article 2.24 B order makes it unappealable and final in the trial court and that consequently this Court is without jurisdiction to hear this appeal. We do not agree. The judgment rendered by the trial court on September 7, 1977, was a final judgment in that it disposed of all matters involved in the suit and determined the rights of all parties in the suit. *North East Independent School District v. Aldridge*, 400 S.W.2d 893 (Tex.Sup.1966); *McHenry v. Shelton*, 456 S.W.2d 194 (Tex.Civ.App.—San Antonio 1970, no writ). Consequently, Tex.Rev.Civ. Stat.Ann. art. 1819 (1964) confers jurisdiction on this Court for purposes of this appeal. The cross-point and motions to dismiss the appeal contentions of Los Campeones are overruled.

The judgment of the trial court is affirmed.