In the Matter of **PANAMA AIRWAYS, INC., Bankrupt.**

**AIR CARRIER ENGINE SERVICE, INC., Petitioner-Appellant,**

v.

**Larry GILBERT, Trustee, Universal Trading Corporation, Respondents-Appellees.**

**No. 28667.**

United States Court of Appeals, Fifth Circuit.

July 2, 1970.

Rehearing Denied July 28, 1970.

Richard R. Paige, Miami, Fla., for Universal Trading Corp.

Don G. Nicholson, Nicholson, Howard, Brawner & Lovett, Miami, Fla., for Larry Gilbert, as trustee for Panama Airways, Inc., Bankrupt.

Before TUTTLE, DYER and CLARK, Circuit Judges.

DYER, Circuit Judge:

Air Carrier Engine Service, Inc. (ACES) appeals from the District Court's denial of its Petition for Review filed pursuant to Bankruptcy Act, Section 39(c), 11 U.S.C.A. § 67(c). Petitioner ACES was a creditor of Aerovias Panama, S.A. (APA), which had leased two DC–6B aircraft from Universal Trading Corporation (UNIVERSAL) with options to buy the planes. ACES complains of an order of the Referee in Bankruptcy entered February 11, 1965, which declared the assets of its debtor, APA, to be the assets of Panama Airways, Inc. (PANAMA), the bankrupt, and of two orders of the Referee dated November 14, 1968, one which reaffirmed the February 11, 1965, order and the other which granted UNIVERSAL's Petition for Reclamation of the proceeds of the sale of the two DC–6B Aircraft. We affirm.

APA is the nominee of the Republic of Panama to operate an airline between Miami, Florida, and the Republic of Panama under a Foreign Aircraft Permit, which is available only by fiat of the President of the United States under the Convention of International Civil Aviation, 61 Stat. 1180. No other entity is entitled to operate under this permit. PANAMA, the bankrupt, is the general representative and agent for APA in the United States. PANAMA filed its voluntary petition in bankruptcy on January 18, 1965. Prior to that time appellant ACES had become a creditor of APA.

Sanford M. Swerdlin, Clewiston, Fla., for petitioner-appellant.

I.

The First Meeting of PANAMA's creditors was held February 5, 1965. At

that meeting counsel for the Trustee of the bankrupt estate stated he was hopeful that rather than seeking to bring APA involuntarily into the proceeding, he could prevail upon APA to acknowledge that its assets were in fact the property of and under the control of PANAMA. APA so acknowledged and stipulated through Benjamin Turner, a director, officer, shareholder and attorney of APA. Appellant ACES was represented at this meeting by its attorney of record on this appeal. No objection was made by ACES or anyone else present to the stipulation that APA's assets were in fact the assets of PANAMA. Accordingly, on February 11, 1965, the Referee entered an order that "all of the assets of Aerovias Panama, S.A. other than its operating certificate, * * * are declared and adjudicated to be the sole property and assets of the debtor, Panama Airways Inc., and to be subject to the exclusive and unrestricted ownership, dominion and control of said debtor and of the Trustee * * *." No one objected to the entry of this order at the time and no one petitioned for review of it.

Subsequently, in late 1967, ACES reduced its claim against APA to judgment in the state court. On November 14, 1968, the successor Referee entered an order determining all pending matters concerning ACES and UNIVERSAL. In this order, he reaffirmed the original order of February 11, 1965, declaring the assets of APA to be the assets of the debtor PANAMA. He further found that such assets were *not conveyed* to PANAMA by APA in fraud of ACES or other APA creditors but that they *were, at the outset,* as acknowledged and stipulated

in open court, the assets of PANAMA. In addition the Referee noted that ACES had actual knowledge of the stipulation and acknowledgment and of the terms of the February 11, 1965, order; that the Trustee had substantially changed his position in reliance on the earlier order both in the administration of the bankrupt estate and in foregoing actions which would have been available to him against APA and debtors of APA; and that despite its knowledge of what had been going on, ACES had taken no action to attempt to set the order aside until March 6, 1968, and, that in sleeping on its rights, if any, ACES had been guilty of an unreasonable delay.[1]

■■ We start with the proposition that "application of the clearly erroneous doctrine becomes paramount when, as here, the District Court has approved the referee's determination." DeMet v. Harralson, 5 Cir. 1968, 399 F.2d 35, 38. Petitioner ACES has made numerous attacks on the order declaring APA's assets to be PANAMA's. Essentially, however, most of the attacks boil down to the single point summed up by petitioner in its Reply Brief on appeal:

> With all the emphasis that the appellant ACES can muster, we defy the appellees Universal and the Trustee, to show any other statement in the record, save and except by the peace-loving Mr. Turner, that sustains the ruling that the assets of the principal APA are the assets of its bankrupt-agent Panama.

It is true that there is no other evidence in the record, except the admission and stipulation by Mr. Turner, which tends to show that APA's assets (with the

---

1. In the order of February 11, 1965, declaring APA's assets to be the assets of PANAMA, the Referee enjoined APA's creditors from instituting suit against APA. The injunction was later dissolved (although the rest of the order remained in effect). It was at this time that ACES reduced its claim against APA to judgment. ACES now contends it could not be guilty of an unreasonable delay because it was prevented from acting against APA until the injunction

was dissolved. This contention misses the point. Although, prior to dissolution of the injunction ACES could not have obtained judgment against APA, it still had a *claim* against APA which it could easily have protected by objecting to the *stipulation and order declaring* APA's assets to be PANAMA's. However, we do not decide the case on this point since we think the Referee's order was substantively correct.

exception of the operating certificate) were in fact PANAMA's. But neither is there a scintilla of evidence to the contrary. The sparsity of evidence is fatal to appellant ACES, not to the appellees. Since the only evidence in the record going to ownership of the assets in possession and control of APA supports the Referee's, and subsequently the District Court's, conclusion, that conclusion cannot conceivably be deemed clearly erroneous.

ACES nevertheless persists in its attack on the order declaring APA's asserts to be PANAMA's by arguing that any one of three other rulings of the Referee and the District Court had the effect of overruling that order. The argument is meritless. The order dismissing the involuntary petition in bankruptcy brought against APA is entirely distinct from the simple factual question of whether APA was holding property belonging to PANAMA. There is no indication in the record, and ACES has given us no reason to think, that the order dismissing the involuntary petition in bankruptcy was in any way based on the question of whether APA was or was not in possession of property owned by another bankrupt, PANAMA. The Referee's holding that APA was not the alter ego of PANAMA is of no avail to ACES, either, because that holding is in no way inconsistent with APA's having in its possession assets belonging to PANAMA. One corporation can hold the assets of another without being the other's alter ego. Nor is the court's refusal to require that APA's creditors be the creditors of PANAMA tantamount to a ruling, as ACES contends, that APA did not at the beginning of the bankruptcy hold assets belonging to PANAMA. If the court's refusal was tantamount to a ruling at all, it would be only a ruling that PANAMA held no assets belonging to APA.

## II.

ACES' second contention is that UNIVERSAL's Petition for Reclamation of the proceeds of the sale of the two DC–6B aircraft it had leased to APA was erroneously granted. Before dealing with this contention it is necessary to recite some of the pertinent facts surrounding the lease of the aircraft.

On March 29, 1963, APA entered into an agreement with UNIVERSAL whereby it leased two DC–6B aircraft from UNIVERSAL at stated rentals. In letters of even date with the lease agreement UNIVERSAL granted APA options to purchase the two aircraft during the term of the lease, and upon written notice and payment of all due and unpaid rentals under the lease.

Although APA was in default in its rental payments under the lease in sums totaling approximately $100,000 in November, 1964, APA and UNIVERSAL entered into verbal discussions for the sale of the two aircraft to Charlotte Aircraft Corp. upon terms different from those contained in the letters granting the options.

However, on or about December 15, 1964, UNIVERSAL advised its lessee APA that back payment of all rentals due was a prerequisite of exercise of the options to purchase and that exercise of the options must be in strict compliance with the other terms of the options as well. Then, by letter dated December 24, 1964, UNIVERSAL notified APA that it was terminating the leases. The leases were terminated by January 15, 1965, three days prior to institution of these bankruptcy proceedings.

After the institution of these bankruptcy proceedings, sale of the two aircraft to Charlotte Aircraft Corp. was permitted by court order which provided that the net proceeds, $55,021.96, were to be placed in a special account pending determination of the rights of UNIVERSAL and APA.

There is no dispute that none of the prerequisites to exercise of the options were met. However, ACES contends that these prerequisites—exercise during the term of the lease upon written notice and back payment of rentals—were

waived by UNIVERSAL when, during the negotiations in November and December of 1964, UNIVERSAL unconditionally agreed to sell the planes to Charlotte Aircraft, APA's nominee. ACES further contends that UNIVERSAL refused to carry out this agreement, which amounted to an amendment of the option terms, and sold the aircraft to Charlotte itself. ACES concludes that since APA exercised the options to purchase the planes, the proceeds of the sale are APA's and reachable by its creditors.

The fallacy in this argument lies in ACES' assumption that UNIVERSAL and APA unconditionally agreed to sell the planes to Charlotte Aircraft. The Referee found that the conversations between APA and UNIVERSAL concerning the possibility of sale of the two aircraft to Charlotte were "inconclusive" and that the negotiations between the parties were never consummated. This finding is supported by the fact that on or about December 15, 1964, UNIVERSAL again advised APA that strict compliance with the terms of the options, including payment of all past due rentals, was a prerequisite to exercise of the options. Furthermore, the conversations between UNIVERSAL and APA concerning the possible sale of the airplanes did not contemplate the sale as an exercise of the options. They contemplated an entirely different transaction whereby a new lease would be executed between UNIVERSAL and APA covering a DC–7 aircraft and collateral guarantees of rental payments would be provided.

It thus clearly appears that none of the prerequisites to valid exercise of the options to purchase were met by APA and that the negotiations in November and December of 1964 do not take their place or estop UNIVERSAL from saying that the prerequisites were not waived.

We have considered all of ACES' contentions relating both to the order declaring APA's assets to be PANAMA's and to the order granting reclamation to UNIVERSAL of the proceeds of the sale of the DC–6B aircraft it had leased to APA, and find them without merit.

The order denying the Petition for Review is

Affirmed.