Peter DeMET et al., Appellants,

v.

Allen B. HARRALSON, Trustee in Bankruptcy in the Matter of Sky Bowl, Inc., Bankrupt, Appellee.

No. 25062.

Unietd States Court of Appeals
Fifth Circuit.

July 26, 1968.

Eli H. Subin, Robert H. Roth, Orlando, Fla., for appellants.

Robert J. Bertrand, Orlando, Fla., for appellee.

Before TUTTLE and GOLDBERG, Circuit Judges, and HOOPER, District Judge.

GOLDBERG, Circuit Judge:

We are asked to apply the rigors of formal adjudication, sometimes found in usual and conventional adversary litigation, to a proceeding in bankruptcy. Claimants in bankruptcy and appellants here were the organizers and operators of the bankrupt. The referee subordinated their claims to those of other creditors, which determination of subordination was affirmed by the district court. On appeal the appellants seek an unsubordinated allowance of their claim or, in the alternative, a ruling that such subordination was rendered without proper notice to them. We reject their entreaties and affirm.

In 1961 the appellants incorporated Sky Bowl, Inc., the bankrupt, and opened a modern, thirty-two lane bowling alley in Orlando, Florida. Each of the appellants was an officer in the corporation, and each owned 31⅔% of the capital stock.[1] To meet pre-opening financial requirements the appellants contributed a total of $30,000.00 in capital expenditures and obtained an additional $76,043.85 through several loans.[2]

---

1. The remaining 5% of the capital stock was held by Wallace Tobias, the manager of the bowling alley, who is not a party to this litigation.

2. The $76,043.85 loaned to Sky Bowl came from the following sources:

| | |
|---|---|
| $35,000.00 | Berlo Vending Corp. for pre-opening expenses |
| 23,333.33 | Harold Vineberg for pre-opening expenses |
| 9,000.00 | DeMet, Vineberg, and Raynor, jointly, for nursery |
| 5,204.18 | DeMet and Vineberg, jointly, for furnishings |
| 3,506.34 | DeMet and Vineberg, jointly, for down payment on cash register and signs |
| $76,043.85 | |

Although Sky Bowl remained open to the public for slightly more than three years, it was never profitable. In August, 1964, Brunswick Corporation, a nationwide distributor of bowling equipment, filed a creditor's petition in the United States District Court for the Middle District of Florida seeking to have Sky Bowl adjudged a bankrupt.

In 1965 a trustee in bankruptcy was appointed to manage the financial affairs of Sky Bowl and to receive claims from creditors of the corporation. One such claim, in the amount of $42,241.85, was filed by the appellants for loans made by them personally to Sky Bowl.[3] The trustee in bankruptcy objected to the claim on the theory that it represented capital contributions rather than bona fide loans.

On February 15, 1966, the status of this contested claim was heard by the referee. Extensive testimony was presented by both the trustee and the appellants concerning the classification of the $42,241.85 as capital investment or loan. At the conclusion of the presentation of evidence, the trustee asked the referee to consider the possibility of subordinating the appellants' claim. Although no further evidence was introduced by either side, the referee requested a legal brief on the question of capital investment versus loan and on the possible subordination of the claim to that of other creditors. The appellants' memorandum of law submitted to the referee discussed both issues, although the question of subordination of the claim was treated rather summarily.

The referee's final ruling was a comprehensive analysis of law and fact. In a two-part discussion of the problem, the referee held initially that the $42,-241.85 represented bona fide loans to Sky Bowl; however, at the conclusion of this finding he continued:

"This ruling, however, presents only half of the problem since as an alternative the trustee seeks a subordination of the claims on equitable principles. Unfortunately, the case was not really tried on that theory at all and the trustee presented no evidence in support thereof. This court must, however, in discharging its statutory obligation under section 2a(2) and 57k consider the entire record including the original petition and the schedules and consider the totality of the evidence and record and make a determination whether or not the claims presented by the individual stockholders shall share pari passu with other creditors or their claims should be subordinated and postponed."

In the second part of the ruling the referee held that the appellants' claim should be subordinated because the entire record supported the finding that each appellant conducted the affairs of Sky Bowl for his own benefit and not for the benefit of the corporation.

The appellants argue that (1) the record does not support this finding, and (2) the referee acted beyond the scope of his authority in even considering the question of subordination without giving the parties notice of the issue and the opportunity to present additional testimony. We, as did the district court, find neither objection to have any merit.

### I. Substantiality of the Evidence

The appellants do not here challenge the referee's power to subordinate debt claims in situations warranting such action. This power is clearly authorized in

---

3. The $42,241.85 represents the composite of several sums delivered by the appellants to the corporation. The claim originally stated that the money was transferred in behalf of a partnership composed of the three appellants. The referee, however, found that the partnership did not exist, and required the parties to set forth their individual amounts.

Payments to the corporation were broken down as follows:

| | |
|---|---|
| $31,787.59 | Harold Vineberg |
| 7,454.26 | Peter DeMet |
| 3,000.00 | Milton Raynor |

For purposes of this appeal, however, the sum will be considered in aggregate since the specifications of error relate to the legality of the referee's action in subordinating all three claims.

the landmark case of Pepper v. Litton, 1939, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281:

"The bankruptcy courts have exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done. By reason of the express provisions of § 2 [4] these equitable powers are to be exercised on the allowance of claims, a conclusion which is fortified by § 57(k) * * *.[5] For certainly if, as provided in the latter section, a claim which has been allowed may be later 'rejected in whole or in part, according to the equities of the case,' *disallowance or subordination in light of equitable considerations may originally be made.*" 308 U.S. at 304–305, 60 S.Ct. at 244 (Emphasis added.)

See also Sampsell v. Imperial Paper & Color Corp., 1941, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293; 3 Collier, Bankruptcy §§ 57.14, 63.08, and 65.06. Cf. Katchen v. Landry, 1966, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391.

■ As an appellate tribunal, we must give deference to the finding of the referee, who was in closer proximity to the economic life of the bankrupt, to the parties involved in its birth and demise, and to its transactional history. Moreover, application of the clearly erroneous doctrine becomes paramount when, as here, the district court has approved the referee's determination. Larkins v. Sills, 5 Cir. 1967, 377 F.2d 1, 3; Spach v. Strauss, 5 Cir. 1967, 373 F.2d 641, 643; and Minella v. Phillips, 5 Cir. 1957, 245

F.2d 687, 690. Starting from this axiom, we turn to the facts upon which the referee found it necessary to subordinate the claim.

■ We need examine only three instances of misconduct to justify the referee's finding that the appellants were motivated by their own interests and were willing to destroy the financial stability of the corporation to obtain them. First, it is undisputed that in its brief period of operation Sky Bowl was continually struggling to meet current expenses. Yet in spite of losses in excess of $20,000.00 in both 1962 and 1963, the appellants transferred more than $42,000.00 from Sky Bowl's account to that of a sister corporation, which was also on the verge of bankruptcy. Second, the appellants caused Sky Bowl to pay $3,500.00 out of future profits to its resident manager when it was apparent that a decided shift in business activity would have to occur before there could possibly be any profits.

Finally, in July, 1964, Sky Bowl transferred all of its assets to Sky Bowl Enterprises, Inc., a corporation owned by Vineberg and DeMet. The referee found that this transfer was the product of an effort to avoid obligations owed by Sky Bowl to the Brunswick Corporation, which desired payment for the bowling equipment.[6] The transfer included the entire leasehold interest, all of the personal property and fixtures, as well as inventory. As consideration, Sky Bowl received a corporate promissory note dated July 27, 1964, in the amount of $33,333.33, the first payment not beginning until February, 1973, and bearing no interest. Moreover, the new corporation explicitly assumed no obligation to Brunswick.

---

4. 11 U.S.C. § 11, unchanged, for purposes of this case, since the *Pepper* litigation.

5. 11 U.S.C. § 93(k), unchanged since the *Pepper* litigation, which provides as follows:

"Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case, but not after the estate has been closed."

6. A history of Brunswick's prior conflicts with Vineberg and DeMet is documented at Brunswick Corp. v. Vineberg, 5 Cir. 1967, 370 F.2d 605 and Vineberg v. Brunswick Corp., 5 Cir. 1968, 391 F.2d 184 [March 4, 1968].

In applying equitable considerations to a claim we should consider that the claimants were the bankrupt's decision-makers and that many decisions inured to their benefit and to the detriment of the bankrupt. We return to Pepper v. Litton, supra, for these germinal words:

"That equitable power also exists in passing on claims presented by an officer, director, or stockholder in the bankruptcy proceedings of his corporation. The mere fact that an officer, director, or stockholder has a claim against his bankrupt corporation or that he has reduced that claim to judgment does not mean that the bankruptcy court must accord it pari passu treatment with the claims of other creditors. Its disallowance or subordination may be necessitated by certain cardinal principles of equity jurisprudence. A director is a fiduciary. Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 588, 23 L.Ed 328, 330. So is a dominant or controlling stockholder or group of stockholders. Southern Pacific Company v. Bogert, 250 U.S. 483, 492, 39 S.Ct. 533, 537, 63 L.Ed. 1099. Their powers are powers in trust. See Jackson v. Ludeling, 21 Wall. 616, 624, 22 L.Ed. 492. Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." 308 U.S. at 306, 60 S.Ct. at 245.

Moreover, in our own Circuit we find the following statement of the law:

"Except as limited by the Bankruptcy Act, courts of bankruptcy are essentially courts of equity and follow eq-

uitable principles. Following such principles it is the duty of the bankruptcy court to sift the circumstances surrounding any claim in order to prevent injustice or fraud in the distribution of the bankrupt's estate. This duty requires careful attention and special scrutiny when the claimants are officers, directors or stockholders of the corporate bankrupt." Spach v. Bryant, 5 Cir. 1962, 309 F.2d 886, 888.

In the case at bar the callous draining of the bankrupt's enonomic sinews is patent and obvious. It is manifestly clear, therefore, that the referee exercised his discretionary powers in consonance with the conscience of equity in subordinating the claim.

## II. *Adequacy of Notice*

We consider next the pivotal question in this case of whether the appellants were afforded adequate notice of the subordination issue. Although a court sitting in bankruptcy must have all available facts before it in order to render an informed determination of an issue in controversy, Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 1968, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1; Wynne v. Rochelle, 5 Cir. 1967, 385 F.2d 789, it does not follow that a bankruptcy hearing is stilted by rigid procedural requirements. The range of inquiry by a referee in bankruptcy is never to be astigmatic. The entire bankruptcy proceeding is the leaven of decision. St. Regis Paper Co. v. Jackson, 5 Cir. 1966, 369 F.2d 136, 141; Georgia Jewelers, Inc. v. Bulova Watch Company, 5 Cir. 1962, 302 F.2d 362, 366–367. Cf. Conley v. Gibson, 1957, 355 U.S. 41, 46–48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80, 85–86. A prayer is not an all-inclusive prospectus for relief even in civil litigation under the aegis of the federal rules.[7]

---

7. A court is most effective when it possesses a viable means to evaluate and even to rearrange the boundaries of a specific claim in order to insure that fair treatment is afforded all parties to the litigation. In re Laskin, 3 Cir. 1963, 316 F.2d 70, 73 (involving a bankruptcy proceeding); Dann v. Studebaker-Packard

**40**

■ The appellants claim prejudice because the issue of subordination was not raised until after the close of testimony. We fundamentally disagree with this premise. The testimony of the appellants themselves, particularly that of Vineberg relating his conduct toward Brunswick, manifestly interjected equitable considerations into the hearing. Even if we assume the appellants were unaware of the possibility of subordination until the referee asked for legal briefs on the questions of capital investment versus loan and of subordination of the claims we cannot overlook the fact that the appellants ignored the available methods of contesting the contemplated action: (1) the legal memorandum to the referee could have pointed out factual problems which needed to be resolved as well as documenting legal reasons for allowing the claim on equal grounds with that of other creditors; (2) the appellants could have asked the referee for time to present additional testimony concerning the question; and (3) rather than merely objecting to the method of determination by the referee in the district court, the appellants were free to ask the judge to receive evidence on this question. Since appellants failed to choose any of the available paths, we are restrained from rewarding a lack of diligence by reversing.

■ The claimants were privy to the bankrupt's transactions, and a comprehensive due process evidentiary hearing which the court might accord a stranger need not always be tendered to intimates and beneficiaries of the transactions. Many creditors in bankruptcy are faceless and rarely take adversary positions during the proceedings. The referee must assure that the interests of such creditors are not neglected and shortchanged, especially when the trustee has failed to don a crusader's armor in their behalf. In contrast, the claimants at bar were continuous and active participants in the bankruptcy proceedings. The proceedings leading to subordination were no trap for the unwary; there was no in camera rejection or denigration of their claims.

Affirmed.

Corp., 6 Cir. 1961, 288 F.2d 201, 215–217; Farmer v. Arabian American Oil Co., 2 Cir. 1960, 285 F.2d 720, 722 (fn. 2); Hutches v. Renfroe, 5 Cir. 1952, 200 F.2d 337, 340–341; Boone v. Boone, 1946,

82 U.S.App.D.C. 38, 160 F.2d 13, 14; Orth v. Transit Inv. Corp., 3 Cir. 1942, 132 F.2d 938, 944; and Goldie v. Cox, 8 Cir. 1942, 130 F.2d 690, 719–720.