In the Matter of **TEXAS CONSUMER FINANCE CORPORATION**, Debtor.

**FIRST SOUTHWEST CORPORATION** et al., Appellants,

v.

**TEXAS CONSUMER FINANCE CORPORATION**, Appellee.

No. 72-2663.

United States Court of Appeals, Fifth Circuit.

June 22, 1973.

**1263**

---

Bill F. Bogle, Fort Worth, Tex., for appellants.

Atwood McDonald, Fort Worth, Tex., for appellee.

Before COLEMAN, MORGAN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Does a Bankruptcy Court have jurisdiction in a Chapter XI proceeding to order the surrender for cancellation of the outstanding preferred stock of the bankrupt corporation? We answer this question in the negative and reverse the order of the District Court.

In this proceeding under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., Texas Consumer Finance Corporation, a Texas corporation, is the Debtor. The subject securities, 800 outstanding shares of preferred stock in Texas Consumer, are owned by First Southwest Corporation, an Oklahoma corporation, and John W. Grissom and Charles R. Grissom, as Trustees of First Southwest's Employees Savings and Stock Plan Funds A and B. The Plan of Arrangement, funded by Colonial Commercial Corporation and approved by the Bankruptcy Court, had as a condition precedent to its effectiveness the provision that all shares of Texas Consumer preferred stock be submitted for cancellation. Although consummation of the Plan was conditioned upon such cancellation, the Plan did not *require* the owners to turn in such preferred shares.

Subsequently, after a hearing pursuant to a show cause order, the Referee entered an order requiring First Southwest and the Trustees to surrender their preferred stock for cancellation. The District Court affirmed the Referee's order.

The controlling question presented by this appeal is whether the Referee had jurisdiction to enter the order. Although our review of the record indicates that the Referee might have had sufficient *reasons* for granting the relief set forth in the order, that order cannot stand if he did not have *jurisdiction* over the preferred shares and the preferred shareholders.

A brief review of the facts will show why the Referee sought control over the preferred shareholders.

John R. Grissom, a member of the Creditors Committee which recommended the Plan of Arrangement, was president of First Southwest, which owned 641 shares of Texas Consumer's preferred stock, and, with his brother, was a Trustee of First Southwest's Employees Funds, which owned 159 shares. He was also president of Lincoln Bank, an unsecured creditor of Texas Consumer with a note for $75,000. Although Grissom initially cast an affirmative vote in committee for the Plan, he later changed his vote at that meeting and subsequently maintained the position that the Creditors Committee was not the proper forum for discussion of the preferred stock.

Lincoln Bank accepted the Plan, but First Southwest and the Trustees refused to surrender their preferred shares. Grissom then offered Colonial, which was to fund the Plan, a "package" deal by which the Lincoln claim would be satisfied in full and the preferred shares would be surrendered for payment of $155,000.

Compliance with Grissom's proposal would have resulted, the Referee found, in Lincoln's receiving 100 percent of its claim while other creditors would have received only 56 percent of their claims and in First Southwest's and the Trustees' receiving 100 percent of the stated redemption price for their shares, which would have been

valueless in the event of an adjudication in bankruptcy and only worth twenty percent of redemption value in the event they had been surrendered for cancellation.

The Referee's finding that Grissom's conduct was "inequitable, unconscionable, or illegal" rested on several particulars, including

(1) his active participation in the Creditors Committee's formulation of the Plan and subsequent refusal to comply;

(2) his failure to disclose to the Committee that First Southwest and the Trustees would not deliver their preferred shares for cancellation;

(3) his non-disclosure to the Court of his conflict of interest as a member of the Creditors Committee;

(4) his failure to disclose his change of vote to fellow Committee members;

(5) his failure to disclose his "package" during consideration of the Plan and his later insistence on its sale for $155,000 in apparent violation of 18 U.S.C.A. § 152;

(6) the fraud and breach of fiduciary duty occasioned by these failures to disclose. Woods v. City Nat'l Bank & Trust Co. of Chicago, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941).

Having found that "Grissom's wrongful conduct has tainted all the entities associated with him," the Referee concluded that First Southwest, the Trustees, and Lincoln "can and will be forced to do equity."

Grissom's conduct, the Referee concluded, "shock[ed] the conscience of the Court":

Grissom intended to withhold his Preferred shares from redemption unless he and his companies were paid in full for all their claims. He decided to "hold out" and "hold up." He made no disclosure of his decision until after acceptance and confirmation of the Plan. In fact he took all steps possible to conceal his true intention from the other members of the Creditors Committee and the Court.

Because of this conduct, consequently, the Referee ordered the surrender of the preferred shares for cancellation. The basis of liability was an implied agreement made by the preferred shareholders through Grissom that the preferred shares would be submitted for cancellation in order to obtain approval of the Plan. The Referee found that Grisson was estopped to deny the agreement and also imposed on Lincoln's claim certain conditions not in question on this appeal. The District Court adopted the Referee's findings of fact and conclusions of law and accepted his reasoning to justify the Court's authority to order this remedy.

Although the Trustee in Bankruptcy might prevail in a plenary action on the implied agreement found by the Referee, the merits of which we have not considered, the claim cannot be asserted in summary proceedings against the shareholders unless the Referee had jurisdiction to administer the preferred shares.

We find that the Referee confused his equitable powers to deal with matters and persons properly before him with his statutory jurisdiction. He asserted the equitable character of Bankruptcy Courts, see Bank of Marin v. England, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); DeMet v. Harralson, 399 F.2d 35 (5th Cir. 1968); Spach v. Bryant, 309 F.2d 886 (5th Cir. 1962), and, relying on these authorities, noted that "[t]he Court's equitable powers are based as the circumstances of the case require, and their application demonstrates considerable ingenuity by the higher courts." For example,

In Pepper v. Litton, *supra,* and De-Met v. Harralson, *supra,* inequitable conduct by corporate officers and directors who were also creditors brought about a subordination of their claims to full payment of the other creditors. In Bank of Marin v. England, *supra,* "equitable principles" led to a recasting of Section 70(d) (5) of the Bankruptcy Act in the face of its plain language and clear legislative history. In Local Loan v. Hunt, *supra,* "equitable principles" led the Court to affirm an injunction

by the Bankruptcy Court of a State Court action to enforce a pre-bankruptcy assignment of wages which had been held by the Illinois Supreme Court to be an undischargeable lien

. . . . . .

■ The Bankruptcy Court is guided by equitable doctrines and principles, but only insofar as they are consistent with the Bankruptcy Act. *See* American United Mutual Life Ins. Co. v. City of Avon Park, Florida, 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. 91 (1940); S.E.C. v. United States Realty Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); Taubel-Scott-Kitzmiller Co., Inc. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770 (1923); In Re Ross Sand & Gravel Inc., 289 F.2d 311 (6th Cir. 1961); Evarts v. Elroy Gin Corp., 204 F.2d 712 (9th Cir. 1953). The equity jurisdiction conferred by the Act merely empowers the Referee to employ the principles of equity in the exercise of his statutory jurisdiction. Jurisdiction of the Bankruptcy Court is framed by statute according to the particular proceeding involved under the Bankruptcy Act, and the Bankruptcy Court's exercise of its equitable powers must be strictly confined within the prescribed limits of the Bankruptcy Act.

Chapter XI, comprising the section of the Bankruptcy Act pertinent to the case at bar, is a statutory variation of the common law composition of creditors for relief to unsecured creditors only. The provisions of an arrangement permitted under Chapter XI include those

> modifying or altering the rights of unsecured creditors generally or of some class of them, upon any terms and for any consideration.

11 U.S.C.A. § 756. Under Chapter XI, the Bankruptcy Court's jurisdiction is limited to the "debtor and his property, wherever located." 11 U.S.C.A. § 711. No provision of the Act permits an arrangement proposed under Chapter XI to deal with the rights of secured creditors or with the rights of stockholders.

*See* 9 Collier on Bankruptcy, ¶ 8.01 at 155 (14th ed. 1940).

■ Although Chapter X is designed to provide detailed safeguards for investors' interests, Chapter XI provides "merely a rudimentary system of creditor control designed for the corporation which has only trade and commercial creditors." S.E.C. v. United States Realty Co., *supra*, 310 U.S. at 437, 60 S.Ct. 1044. Thus, a Chapter X reorganization plan may affect the securities of the debtor corporation, but only the rights of the debtor's unsecured creditors may be arranged under Chapter XI. The status of the debtor's securities may not be altered. *See* S.E.C. v. American Trailer Rentals Co., 379 U.S. 594, 85 S. Ct. 513, 13 L.Ed.2d 510 (1965); S.E.C. v. United States Realty Co., *supra*; *see also* 8 Collier on Bankruptcy, *supra*, at ¶ 2.07, et seq.

■■ The background and interrelationship of Chapter X and Chapter XI have been reviewed by the Supreme Court in S.E.C. v. American Trailer Sales, *supra*;

> As part of the same Act in which Chapter X was enacted Congress also, in 1938, enacted Chapter XI. . . . The contrast between the provisions of Chapter X, carefully designed to protect the creditor and stockholder interests involved, and the summary provisions of Chapter XI is quite marked . . . [While Chapter X affords judicial control over the entire proceedings and expert, impartial administrative assistance in corporate reorganization,] the entire Chapter XI proceeding, for all practical purposes is in the hands of the debtor, subject only to the requisite consent of a majority in number and amount of unsecured creditors, § 362, and the ultimate finding by the court that the plan is, *inter alia*, "for the best interests of the creditors." § 366.

379 U.S. at 605–606, 85 S.Ct. at 520; *see* General Stores Corp. v. Shlensky, 350 U.S. 462, 76 S.Ct. 516, 100 L.Ed. 550

(1956); S.E.C. v. United States Realty Co., *supra*. The purpose of Chapter XI, therefore, is merely to provide "a quick and economical means of facilitating simple compositions among general creditors who have been deemed by Congress to need only the minimal disinterested protection provided by the Chapter." 379 U.S. at 606–607, 85 S. Ct. at 520. Since the Bankruptcy Court, in Chapter XI proceedings, has jurisdiction of only the debtor and his property and the corporate debtor has no property interest in the shares of its stock owned by its stockholders, the Court has no jurisdiction to order or restrain disposal of their stock. *See* S.E.C. v. American Trailer Rentals Co., *supra*; S.E.C. v. United States Realty Co., *supra*; In Re Journal-News Corp., 193 F.2d 492 (2nd Cir. 1953).

First Southwest and the Trustees were stockholders, not creditors of Texas Consumer, and the Bankruptcy Act does not confer on the Bankruptcy Court jurisdiction of such parties. The summary procedure which is the main thrust of Chapter XI requires that the debtor and unsecured creditors themselves, without the delay and expense involved in protracted Chapter X proceedings, insure continuation of the business under a self-determined arrangement. The cases relied upon by the Referee sustained the equitable power of the Court as directed against creditors of the Bankrupt, not stockholders.

The Referee's jurisdictional claim also rested on his finding that First Southwest and the Trustees, by filing claims under the Plan, consented to jurisdiction of them as creditors. This conclusion is erroneous for two reasons.

*First,* First Southwest and the Trustees withdrew their claims as they were entitled to do as a matter of right. Scholl Mfg. Co. v. Rodgers, 51 F.2d 971 (8th Cir. 1931).

*Second,* although some cases hold that summary jurisdiction may be conferred by consent, *see, e. g.,* Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); In Re Behring and Behring, 445 F.2d 1096 (5th Cir. 1971), the consent issue there concerns whether the Court should proceed summarily rather than by plenary proceedings. It is the mode of procedure that is the subject of consent. Jurisdiction of subject matter must be established before this question may even be raised, and it cannot be conferred by consent, agreement, or other conduct of the parties. *See* Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939); Harllee v. City of Gulfport, 120 F.2d 41 (5th Cir. 1941).

Finding that the Bankruptcy Court, albeit an equity court, has no jurisdiction of stockholders in Chapter XI proceedings, it is unnecessary for us to consider the merits of the District Court's conclusion that First Southwest and Trustees were guilty of inequitable conduct.

Reversed.