**R.I.D.C. INDUSTRIAL DEVELOPMENT FUND, Plaintiff,**

v.

**P. L. SNYDER, Defendant.**

**No. 72–45–Civ–Oc.**

United States District Court,
M. D. Florida,
Ocala Division.

Jan. 9, 1975.

Frank D. Newman, DeLand, Fla., for plaintiff.

Robert E. Austin, Jr., Leesburg, Fla., for defendant.

## ORDER AND OPINION

CHARLES R. SCOTT, District Judge.

This is a suit based on certain promissory notes executed by the primary obligor, Sunnyhill Research & Manufacturing Company (hereinafter referred to as SMAC or Sunnyhill, its successor in interest and now a bankrupt), in favor of the plaintiff and guaranteed by the defendant P. L. Snyder, a principal in SMAC. Involved in this case is the question of the effect of a plan of arrangement under Chapter XI of the Bankruptcy Act on a secured creditor which attempted to voluntarily submit itself to the jurisdiction of the bankruptcy court. This Court concludes that the plaintiff is barred as a matter of law from proceeding against the defendant on the notes in question.

## I. FACTUAL BACKGROUND

Plaintiff R.I.D.C. Industrial Development Fund and SMAC's predecessor in interest, Sunnyhill Research & Manufacturing Company, entered into two credit agreements, one dated August 24, 1964, and the other dated April 11, 1966, pursuant to which the two subject promissory notes of $335,000.00 and $100,-000.00, respectively, were executed by Sunnyhill in favor of the plaintiff. These credit agreements provided:

4. To induce the lenders to enter into this agreement and as a condition precedent to its rights to borrow hereunder, Company has:

(a) executed and delivered a chattel mortgage to R.I.D.C. Fund covering all its present equipment with an after acquired property clause to cover any equipment which it may acquire in the future and constituting, or to constitute, as the case may be, a first lien thereon for the purpose of securing the R.I.D.C. Fund loan; ·

By virtue thereof, plaintiff became a secured creditor of SMAC. In addition, the defendant P. L. Snyder, along with his now deceased brother C. H. Snyder, in accordance with the provisions of the credit agreements, executed two guaranty agreements, dated, respectively, August 24, 1964, and. November 9, 1966. These guaranty agreements provided in pertinent part as follows:

Guarantors, their heirs and assigns, jointly and severally, do hereby absolutely and unconditionally promise and guarantee to R.I.D.C. Fund the prompt and punctual payment of all amounts required to be paid under said Credit Agreement; and that the obligations assumed and guaranteed by Guarantors shall continue with the same force and effect until the debt is paid in full; and further that recourse may be made to Guarantors upon this Guaranty without requiring any proceedings to be taken against Borrower, and that any change or alteration in the Credit Agreement shall not discharge the obligation of Guarantors hereunder, which shall be absolute until all claims of R.I.D.C. Fund against Borrower arising out of said Credit Agreement shall have been settled and discharged in full; however, *Guarantors shall not be bound hereunder by*

*any alteration or modification of said Credit Agreement which extends the term of repayment or increases the amount due thereunder without their written approval of any such alteration or modification.* (emphasis added)

On January 22, 1968, with the defendant's written consent, SRM Company entered into an acquisition agreement with Sunnyhill, the principal obligor, and purchased all of its assets. That agreement listed R.I.D.C. as a secured creditor under its schedule of "Permitted Liens." On the same date, SRM Company and Sunnyhill, also with the defendant's consent, entered into a modification of security agreement whereby the parties thereto agreed that R.I.D.C.'s security interest would continue in the machinery, equipment and tools but not as to the inventory. Sunnyhill and SRM Company also agreed that SRM Company would not assume the obligations underlying the security interest.

On January 23, 1968, plaintiff R.I.D.C. Fund and certain other creditors of Sunnyhill, with the defendant's written consent, entered into an agreement regarding payment of amounts due both secured and unsecured creditors. Plaintiff requested and secured the written consent of the defendant for its entry into the acquisition agreement, the modification of security agreement and the creditors agreement because the terms thereof were such as to materially modify the guaranty agreements and thus the guarantors' consent was necessary to prevent their release from any obligation thereunder. 74 Am.Jur.2d, Suretyship, §§ 50-51. This Creditors' Agreement provided in paragraphs 7 and 8 as follows:

7. This agreement shall terminate upon the happening of any of the following events:

(a) the payment in full of all creditors of Sunnyhill disclosed on Exhibit "A";

(b) the unanimous agreement of the parties hereto; or

(c) *the valid and effective foreclosure by R.I.D.C. Fund of its security interest* (or acquisition of title of the assets pursuant to said security interest) with respect to assets or inventory covered by Section 2.01 and/or Articles V and VII of the SRM Agreement. (emphasis added)

8. *In the event of bankruptcy* or other cessation of business of SRM, all funds held by Sunnyhill for distribution to creditors shall be promptly distributed and thereafter *this agreement shall terminate.* (emphasis added)

In June 1968 Sunnyhill entered into an arrangement proceeding under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701-799. The record does not indicate that plaintiff R.I.D.C. ever sought the defendant's written approval of R.I.D.C.'s participation in the plan of arrangement. In addition, the record is clear that the defendant never actually agreed or consented in writing to plaintiff's participation in the Chapter XI proceeding. The plan of arrangement, which was subsequently approved by the bankruptcy court on July 2, 1968, provided in pertinent part as follows:

5. Any *indebtedness* of unsecured creditors and the *secured creditors* executing the attached Consent remaining unpaid after the last of the distributions provided for herein has been made shall be *cancelled, discharged and extinguished.* Debtor shall so notify such creditors. (emphasis added)

6. This Arrangement upon confirmation *shall supersede the provisions of the Agreement dated January 23, 1968* between the debtor, Sun Capital, R.I.D.C. and the Creditors' Committee established pursuant to a Creditors' Agreement dated January 6, 1967.

.    .    .    .    .    .

*Consent of Certain Secured Creditors*

In consideration of the above Arrangement and intending to be legally bound

hereby, the undersigned hereby consent and agree to the terms of such Arrangement, including but not limited to Section II(5), which provides for the discharge of the debts of the undersigned, and the undersigned *agree that during the term of the Arrangement they will not take any action to enforce their rights as secured creditors of the debtor.* If such Arrangement is not confirmed, this Consent shall be cancelled, but the undersigned may not withdraw this Consent before the Court renders a decision regarding confirmation and, if the plan is confirmed, this Consent shall thereafter be irrevocable. (emphasis added)

This consent was signed by D. R. Clifford, as executive vice-president of R.I. D.C., and C. H. Snyder, as president of Sun Capital Corporation. The net effect of the arrangement was: (1) to assign priorities to R.I.D.C. and Sun Capital, the secured creditors, and the unsecured creditors as to any sums that would be available for distribution, and (2) to extend the time of payment of the bankrupt's debts.

The plaintiff, after rendering itself unable to collect the full amount of the debt from the principal obligor, Sunnyhill, brought this action against one of the guarantors, P. L. Snyder, for $312,869.03 on the 1964 note and for the full $100,000.00 on the 1966 note, for a total of $412,869.03.

The defendant contends, under the established principles of suretyship law, that the Plan of Arrangement, which provided that "any indebtedness of . . . the secured creditors [was] . . . cancelled, discharged and extinguished" as to the principal obligor also extinguished any liability on his part as a guarantor or surety since he did not consent to it. 74 Am.Jur.2d, Suretyship, § 98. *See* Dabney v. Chase National Bank of City of New York, 201 F.2d 635, 641 (2d Cir. 1953), cert. den. 346 U.S. 863, 74 S.Ct. 102, 98 L.Ed. 374; Sarasota County, Florida v. American Surety Co. of New York, 68 F.2d 543, 544 (5th

Cir. 1934). Restatement of Security § 122.

■ The plaintiff, on the other hand, contends that Section 16 of the Bankruptcy Act, 11 U.S.C. § 34, nevertheless preserves the right of recovery against a guarantor. That section provides as follows:

The liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt.

Both parties agree that this section is applicable to Chapter XI proceedings. United States v. George A. Fuller Co., 250 F.Supp. 649 (D.Mont.1966); 1 Collier, Bankruptcy, § 16.02 at 1525 (14th ed. 1964). The bankruptcy court is simply without the power to affect the underlying obligation as to the surety. United States v. George A. Fuller Co., *supra,* at 658.

The defendant counters with the argument that the plan of arrangement could not affect the legal rights of the plaintiff by operation of law under the Bankruptcy Act since the plaintiff participated therein as a secured creditor. Therefore, the defendant argues, the plan of arrangement, which is thus a nullity under the bankruptcy law, becomes a contractual agreement between the creditor and the principal obligor so that the well-settled general principles of suretyship law apply so as to extinguish the liability of the defendant surety.

■ The defendant is certainly correct that if the plaintiff *did in fact* participate in the plan of arrangement as a secured creditor without relinquishing its security, then the plan of arrangement could not affect the legal rights of the plaintiff in the manner provided for under the Bankruptcy Act. In the Fifth Circuit decision of In re Texas Consumer Finance Corporation, 480 F.2d 1261 (5th Cir. 1973), the Court stated:

*No provision of the Act permits an arrangement proposed under Chapter XI to deal with the rights of secured*

*creditors* or with the rights of stockholders. *See* 9 Collier in Bankruptcy, § 8.01 at 155 (14th ed. 1940). . . . Thus, a Chapter X reorganization plan may affect the securities of the debtor corporation, *but only the rights of the debtor's unsecured creditors may be arranged under Chapter XI.* The status of the debtor's securities may not be altered. . . . (citing cases) (emphasis added).

480 F.2d at 1265. The question then arises as to whether the plaintiff was a secured creditor at the time it participated in the Chapter XI proceedings.

## II. WAS R.I.D.C. A SECURED CREDITOR WHEN IT CONSENTED TO THE PLAN OF ARRANGEMENT?

The evidence seems clear that R.I.D.C. was a secured creditor of Sunnyhill when SRM purchased the assets of Sunnyhill on January 22, 1968. Section 3.06(a) of the acquisition agreement between SRM Company and Sunnyhill provided, in pertinent part, as follows:

> None of the Assets to be Acquired is subject to any mortgage, pledge, lien, conditional sale agreement, security title, encumbrance or other charge *except Permitted Liens.* (emphasis added)

The Schedule of Permitted Liens affixed to the agreement listed the following lien:

> 1. Security Agreement between R. I.D.C. Industrial Development Corporation and Sunnyhill Research & Manufacturing Company dated August 28, 1964.

The modification of security agreement, also dated January 22, 1968, implicitly suggests that the 1966 credit agreement was but an extension of the 1964 credit agreement so that the security for both loans survived the acquisition agreement between SRM and Sunnyhill.

In addition, as indicated previously, the Creditors' Agreement dated January 23, 1968, one day after the date of the acquisition agreement, provided that the agreement would terminate upon the happening of "the valid and effective foreclosure by R.I.D.C. Fund of its security interest." Furthermore, Exhibit A of the Creditors' Agreement listed R.I.D.C. as a secured creditor in the amount of "$420,600.51 plus accrued interest."

The plan of arrangement clearly differentiated between secured and unsecured creditors, specifically adverted to R.I.D.C. as a secured creditor several times and provided for the cancellation, discharge and extinguishment of the indebtedness of "secured creditors," including R.I.D.C. In addition, attached to the plan of arrangement was, as pointed out previously, a document denoted as "Consent of Certain Secured Creditors," which was signed by the president of R.I.D.C. Nowhere in the Plan of Arrangement, the Creditors' Agreement of January 23, 1968, the Acquisition Agreement of January 22, 1968, or the modification thereof of the same date, was there the slightest indication whatsoever that R.I.D.C. had relinquished or waived its security, except as to the debtor's inventory. R.I.D.C. still retained a security interest in the machinery, equipment and tools purchased by SRM from Sunnyhill, although the collateral resided in the hands of SRM.

The plaintiff asserts as significant that the parties to the Acquisition Agreement agreed that SRM would not assume the underlying indebtedness. However, as the defendant correctly points out, the fact that SRM did not assume the debt did not affect the plaintiff's continuing security interest in the property purchased by SRM since the right to foreclose on the security interest was separate and distinct from the right to sue on the underlying obligation. R.I.D.C. could either sue Sunnyhill on the underlying debt or foreclose its lien on the machinery, equipment and tools which were in the possession of SRM.

The plaintiff contends, however, that it waived its security interest by allowing Sunnyhill to transfer the collateral to SRM subject to the security interest. In effect, the plaintiff contends that a creditor is no longer secur-

ed once the debtor is allowed to convey the collateral for the debt to a third party even though the security interest was contractually allowed to survive the transfer. This contention is without merit.

Section 9–105(1)(i) of the Uniform Commercial Code, which is in force in both Florida and Pennsylvania, defines a "secured party" as:

> . . . a lender, seller or other person *in whose favor there is a security interest,* including a person to whom accounts, contract rights or chattel paper have been sold. . . . (emphasis added)

Section 9–105(1)(d) defines a "debtor" as:

> . . . the person who owes payment or other performance of the obligation secured, *whether or not he owns or has rights in the collateral,* and includes the seller of accounts, contract rights or chattel paper. *Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the Article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.* (emphasis added)

Official Comment 2 to that section states in pertinent part that:

> Occasionally, one person furnishes security for another's debt, and *sometimes property is transferred subject to a secured debt of the transferor which the transferee does not assume;* in such cases, under the second sentence of the definition, the term "debtor" may, depending upon the context, include either or both such persons. . . . (emphasis added)

These pronouncements, taken together, indicate that a secured creditor retains his secured status even though the collateral is transferred to a third party as long as the transfer is subject to the security interest as in this case. Therefore, R.I.D.C. continued to be a secured creditor even though Sunnyhill transferred the collateral for the debt to SMAC pursuant to the acquisition agreement of January 22, 1968.

Thus, this Court holds that R.I.D.C. was a secured creditor at the time the plan of arrangement was confirmed by the bankruptcy court in the Western District of Pennsylvania.

III. THE EFFECT OF THE PLAN OF ARRANGEMENT ON R.I.D.C.

Having concluded that R.I.D.C. was a secured creditor at the time the plan of arrangement was confirmed and that, therefore, the plan of arrangement would not affect the *statutory* rights under the Bankruptcy Act of R.I.D.C. *vis-a-vis* the defendant and Sunnyhill despite R.I.D.C.'s voluntary participation in the Chapter XI proceedings, In re Taxes Consumer Finance Corporation, *supra,* the question then arises as to what was the effect on R.I.D.C.'s legal rights *vis-a-vis* the defendant apart from those provided for under the Bankruptcy Act.

The defendant contends that the confirmed plan of arrangement, albeit defective insofar as R.I.D.C.'s statutory rights under the Bankruptcy Act are concerned, is nonetheless effective as a contractual composition of creditors. This Court agrees for the reason that the inability of the bankruptcy court to affect R.I.D.C.'s rights as a secured creditor naturally places whatever agreement entered into by the secured creditors with Sunnyhill outside the scope of the bankruptcy law. Without the sanction and control of the bankruptcy court, the practical effect of the defective plan of arrangement as to R.I.D.C. and Sun Capital, as secured creditors, is to leave a naked contractual composition of creditors. Since this is the case, the normal rules of general suretyship law apply so as to release the defendant as a guarantor from liability. 15 Am.Jur.2d, Composition with Creditors, § 7.

This application of the general rule of suretyship law comports with the ex-

press language of the plan of arrangement:

5. Any indebtedness of unsecured creditors and the secured creditors executing the attached consent remaining unpaid after the last of the distributions provided for herein has been made shall be *cancelled, discharged, and extinguished.* Debtors shall so notify such creditors. (emphasis added)

The terms "cancelled" and "extinguished" tend to indicate absolute annihilation of the underlying obligation without any possibility of revival as opposed to the mere "discharge" of the principal debtor which allows for the possibility of restoration or revitalization of the debt under some circumstances and for the continued liability of any sureties.

Therefore, on the basis of the foregoing, this Court concludes that the release of the primary obligor and the extinguishment of the debt under what was a defective plan of arrangement operated to release the defendant guarantor from liability.

## IV. CONTRAVENTION OF THE GUARANTY AGREEMENT

As an alternative ground for a decision in favor of the defendant, it should be pointed out that the plaintiff's entry into the plan of arrangement with the primary obligor, without the defendant's written consent, with said plan extending the term of repayment, was in contravention of the terms of the guaranty agreements which provide:

Guarantors shall not be bound hereunder by any alteration or modification of said Creditors' Agreement, which extends the term of repayment or increases the amount due thereunder without their written approval of any such alteration or modification.

The lack of written consent by the guarantors as to the plaintiff's participation in the plan of arrangement must be contrasted with the active solicitation and ultimate acquisition of the guarantors'

written approval of the acquisition agreement of January 22, 1968, and the Modification of Security Agreement and the Creditors' Agreement of January 23, 1968, which indicates a recognition on the part of plaintiff that such written approval was necessary to prevent the guarantors from being released from liability under the guaranty agreements. Therefore, this Court holds that the plaintiff's entry into the plan of arrangement with the principal debtor without the defendant's written approval, as was required under the terms of the guaranty agreements, operates to release the defendant from liability thereunder. 74 Am.Jur.2d, Suretyship, §§ 50–51.

The fact that the provisions in the plan of arrangement for extension of the time for payment of the debt, to which the defendant did *not* consent, may not have been radically different from the comparable provisions in the Creditors' Agreement of January 23, 1968, to which the defendant *did* consent in writing, as the plaintiff contends, is irrelevant to this holding since the plan of arrangement specifically provided that it "shall supersede the provisions of the Agreement dated January 23, 1968 between the debtor, Sun Capital, R.I.D.C. and the Creditors' Committee. . . ." The written consent executed with respect to the January 1968 Creditors' Agreement cannot be held to have applied with equal effect to the plan of arrangement. Therefore, the plaintiff should have requested and obtained the defendant's written consent before it attempted to further extend the time for payment of the debt pursuant to the plan of arrangement. Its failure to do so operated to release the defendant.

Therefore, it is

Ordered:

1. A final judgment in favor of the defendant shall be entered contemporaneously herewith by separate document.

2. This order and opinion constitutes this Court's findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure.