**R.I.D.C. INDUSTRIAL DEVELOPMENT FUND, Plaintiff-Appellant,**

v.

**P. L. SNYDER, Defendant-Appellee.**

**No. 75–1570.**

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1976.

Rehearing Denied Nov. 8, 1976.

Frank D. Newman, De Land, Fla., Robert L. Potter, Pittsburgh, Pa., for plaintiff-appellant.

Robert E. Austin, Jr., Leesburg, Fla., for defendant-appellee.

Before WISDOM and MORGAN, Circuit Judges, and LYNNE, District Judge.

MORGAN, Circuit Judge.

In 1964 and 1966, defendant P. L. Snyder guaranteed two promissory notes executed by Sunnyhill Research and Manufacturing Company (Sunnyhill)[1] to plaintiff R.I.D.C. Industrial Development Fund (R.I.D.C.). Finding itself unable to pay its debts when they came due, Sunnyhill entered into an arrangement proceeding under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–799. R.I.D.C., having received less than the full face amount of the debt owing to it, brought this diversity action against defendant Snyder as guarantor of Sunnyhill. The district court, 387 F.Supp. 466 held that R.I.D.C.'s participation in the Chapter XI proceedings released defendant Snyder from further obligation under the guarantee. R.I.D.C. appeals.

---

1. Although Sunnyhill changed its name to SMAC during the course of the transactions discussed in this opinion, for purposes of consistency we will refer to it as Sunnyhill throughout the opinion.

## I.

In August of 1964, R.I.D.C. and Sunnyhill entered into a credit agreement under which R.I.D.C. lent Sunnyhill $335,000. The loan was conditioned upon Sunnyhill granting R.I.D.C. a security interest in all presently owned and after-acquired equipment, and upon defendant Snyder and his brother, the principals of Sunnyhill, guaranteeing the payment of all indebtedness under the credit agreement.

Two years later in April of 1966, R.I.D.C. and Sunnyhill entered into a second credit agreement under which R.I.D.C. lent Sunnyhill an additional $100,000. In connection with this loan, Sunnyhill granted another security interest which covered all present and after-acquired inventory and which also included a cross-collateral provision tying this security interest to the existing security interest in equipment. Once again, defendant Snyder and his brother were required to execute personal guarantees.

Five months later, in September 1966, Sunnyhill found itself unable to pay its debts as they matured. The creditors, including R.I.D.C., agreed to a six-month moratorium on collections. The Snyder brothers, as guarantors of payment under the 1964 and 1966 credit agreements, consented to the extension.

Sunnyhill's financial condition did not improve, so it sought and eventually found a purchaser for its assets. On Janu-ary 22, 1968, SRM Company (SRM) and Sunnyhill entered into an acquisition agreement under which SRM purchased all of Sunnyhill's assets with the exception of its inventory which SRM agreed to buy as the need arose. Concurrently, SRM and R.I.D.C. agreed that R.I.D.C.'s security interest would continue in the equipment formerly belonging to Sunnyhill until SRM paid the entire sum due Sunnyhill. The following day, R.I.D.C. and certain other creditors of Sunnyhill entered into an agreement regarding payment of Sunnyhill's debts.[2] The Snyder brothers, as guarantors, consented to all of these transactions. In June of 1968, under pressure from creditors other than R.I.D.C., Sunnyhill entered into an arrangement proceeding under Chapter XI of the Bankruptcy Act. Under this arrangement, the creditors set up payment schedules quite similar to those under the Creditor's Agreement of January 23, 1968, but also provided that "any indebtedness . . remaining unpaid after the last of the distributions . . . shall be cancelled, discharged and extinguished."[3] It further provided that the Chapter XI arrangement superseded the Creditors' Agreement of January 23, 1968, and that the secured creditors "agree that during the term of the Arrangement they will not take any action to enforce their rights as secured creditors of the debtor." The Snyder brothers did not execute a written consent as guarantors of debts affected by the arrangement.

2. Section 3(e) of the Creditor's Agreement of January 23, 1968, provides that R.I.D.C. would receive 335/435 of the payments from sale of the assets of Sunnyhill to SRM and that Sun Capital would receive 100/435. Both were secured with regard to different classes of the assets which were sold as a whole to SRM. Section 3(f) provided that R.I.D.C. would receive the first $100,000 received from the sale of inventory and 435/535 of any proceeds in excess of $100,000. Thus, while it is unclear from the record whether the Creditor's Agreement set up preferences for R.I.D.C. identical in effect to its security interests, it is clear that the agreement did set up preferences quite similar to its security interests.

3. Both the district court and the defendant contend that the choice of language in the arrangement that provides: "[a]ny indebtedness . . remaining unpaid after the last of the distributions provided for herein has been made shall be cancelled, discharged, and extinguished," is of great import to the case. The district court held that the inclusion of "cancelled" and "extinguished" along with "discharged" expressed an intent to "absolute[ly] annihilat[e]" the debt. The defendant argues that discharge of the debt instead of the debtor eliminates the underlying debt, thus preventing the creditor from having recourse to the guarantor. We reject both of these readings. The bankruptcy court can affect only the relationships of debtors and creditor. It has no power to affect the obligations of guarantors. *United States v. George A. Fuller Co.*, 250 F.Supp. 649, 656 (D.Mont.1966); cf. *In re Kornbluth*, 65 F.2d 400, 402 (2nd Cir. 1933).

The district court held that R.I.D.C. was a secured creditor by virtue of continuation of its security agreement in the equipment sold to SRM, that as secured creditors they were outside of the jurisdiction of Chapter XI of the Bankruptcy Act, that because there was no jurisdiction the arrangement was merely a contractual agreement among the parties, and that accordingly their rights against the guarantors were not protected by § 16 of the Bankruptcy Act, 11 U.S.C. § 34, because the remainder of the debt was not discharged under the coercive powers of the Bankruptcy Court. R.I.D.C. appeals, arguing that it was not a secured creditor, and even if it were secured, it was nevertheless protected by § 16.

## II.

One of the primary purposes for obtaining a guarantor to a note is to provide an alternative source of repayment in the event that the principal obligor's debt is discharged in bankruptcy.[4] Accordingly, the Bankruptcy Act provides that discharge in bankruptcy will not alter the liability of a guarantor. Section 16 of the Act states:

> The liability of a person who is a codebtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt.[5]

The district court held this section inapposite because the Bankruptcy Court lacked jurisdiction to discharge secured debts. The plaintiff attacks that ruling, arguing alternatively that he was not a secured creditor, and that even if he were, his participation in the Chapter XI proceedings is protected by § 16.

The conclusion of the district court that R.I.D.C. was a secured creditor is based on the security interest that R.I.D.C. held in the equipment in the hands of SRM. In support of this proposition, the district court cites § 9–105 of the Uniform Commercial Code and Official Comment 2 to that section. We find, however, that the district court's reliance on the Uniform Commercial Code is misplaced.

To determine who is a secured creditor for purposes of the Bankruptcy Act, one must turn not to the Uniform Commercial Code, but to the definitions within the Act.[6] 11 U.S.C. § 1(28) provides:

> "Secured creditor" shall include a creditor who has security for his debt upon the property of the bankrupt of a nature to be assignable under this title or who owns such a debt for which some endorser, surety, or other person secondarily liable for the bankrupt has such security upon the bankrupt's assets.

This definition is narrower than the popular meaning of the term "secured creditor" and clearly excludes cases in which the security interest is in property not belonging to the bankrupt,[7] even if the security interest originally encumbered property of the bankrupt that the bankrupt parted with prior to bankruptcy. In *Ivanhoe Building and Loan Association v. Orr*, 295 U.S. 243, 55 S.Ct. 685, 79 L.Ed. 1419 (1935), the bankrupt's trustee attempted to have the plaintiff classified as a secured creditor because it continued to hold a security interest in some property which the bankrupt had previously held while the property was under the plaintiff's security interest. The court ruled that the decision must be governed by the definition in § 1 of the Act and that the plaintiff did not come within the definition because it held no security against the

---

4. *See Maryland Casualty Co. v. Moore*, 82 F.2d 189 (2nd Cir.), *cert. denied*, 298 U.S. 666, 56 S.Ct. 749, 80 L.Ed. 1390 (1936).

5. 11 U.S.C. § 34. *See United States v. Anderson*, 366 F.2d 569, 571 (10th Cir. 1966).

6. The definitions in § 1 of the Act are made applicable to Chapter XI proceedings by virtue of 11 U.S.C. § 702.

7. *In re United Cigar Stores Co. of Am.*, 73 F.2d 296, 297, 298 (2d Cir. 1934), *cert. denied*, 294 U.S. 708, 55 S.Ct. 405, 79 L.Ed. 1243 (1935). *See* 1 Collier on Bankruptcy, ¶ 1.28 at 130.24 (14th ed. 1976); 9 Collier on Bankruptcy, ¶ 8.01 at 169 (14th Ed. 1976); 3 Collier on Bankruptcy, ¶ 57.07 at 164 (14th ed. 1976). Murphy, Restraint and Reimbursement: The Secured Creditor in Reorganization and Arrangement Proceedings, 30 Bus.Law 15, 17 n. 11 (1974).

*bankrupt's* property at the date of bankruptcy.[8]

The circumstances in the present case are nearly identical to those in *Ivanhoe.* R.I.D.C., like the claimant in *Ivanhoe,* held a security interest in property in the possession of the bankrupt, but prior to bankruptcy the property was conveyed to a third person.[9] Thus, with respect to the 1964 security interest in equipment, R.I.D.C. was not a secured creditor.[10]

Although we must reverse the district court's ruling that R.I.D.C. was a secured creditor by virtue of its security interest on equipment sold to SRM, the 1966 security interest on the inventory operates to render R.I.D.C. a secured creditor because part of the inventory remained in the possession of Sunnyhill after the sale of its other assets to SRM.[11] Moreover, R.I.D.C. conceded at argument that the 1964 and 1966 loans were cross-collateralized. Consequently, R.I.D.C. was a secured creditor with regard to all of the debts owed it by Sunnyhill.

### III.

Once the district court determined that R.I.D.C. was a secured creditor, the court went on to consider whether it could avail itself of the protection of § 16 of the Bankruptcy Act. The court reasoned that since R.I.D.C. was a secured creditor, the debt owed it by Sunnyhill could not be discharged in a Chapter XI proceeding. Accordingly, the discharge of Sunnyhill's debt was not a coercive effect of the Bankruptcy Act, but a contractual agreement voluntarily entered into by R.I.D.C. Since the discharge was not accomplished under the Bankruptcy Act, § 16 could not protect R.I.D.C. from the effect of its "voluntary discharge of Sunnyhill" upon the guarantee agreement with Snyder. Our examination of the problem leads us to a contrary conclusion: bankruptcy courts may have jurisdiction over secured creditors in Chapter XI proceedings and, if the debt owed the secured creditor is altered by a Chapter XI arrangement, the secured creditor's guarantee is insulated by § 16 of the Bankruptcy Act.

In both *SEC v. American Trailer Rentals,* 379 U.S. 594, 605, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965), and *SEC v. U. S. Realty and Improvement Co.,* 310 U.S. 434, 446, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940), the Supreme Court stated that the purpose of Chapter XI proceedings is to secure judicial confirmation to an arrangement, or adjustment, of a debtor's unsecured obligations.[12] In the recent case of *In re Texas Consumer Finance Corp.,* 480 F.2d 1261 (5th Cir. 1973), this court discussed the meaning of those cases and the complementary roles of Chapter X and Chapter XI. In that case the bankruptcy court had attempted to impose upon certain parties a requirement that they surrender their shares of preferred stock as a condition to the confirmation of the proposed Chapter XI arrangement. We said at that time, "no provision of the Act permits an arrangement proposed under Chapter XI to deal with the rights of secured creditors or with the rights of stockholders." We now limit that dicta in two regards. First, we recognize the obvious proposition that Chapter XI arrangements can deal with the rights of secured creditors

---

8. 295 U.S. at 245–46, 55 S.Ct. 685. *See* 1 Collier on Bankruptcy, ¶ 1.28 at 130.25 (14th ed. 1976).

9. *Compare In re United Cigar Stores,* 73 F.2d 296, 297–98 (2nd Cir. 1934), in which the court refused to pierce the corporate veil and held that the creditor was unsecured even though the bankrupt held all of the stock of corporation owning the collateral.

10. Appellee contends that R.I.D.C. held a security interest in the proceeds from the sale of collateral to SRM. The security agreement, however, failed to include the word "proceeds" in the description of the collateral and thus no security interest is created. 12A Pa.Stat.Ann. § 9–203. R.I.D.C.'s rights in the proceeds were limited to those agreed to in the SRM acquisition agreement and the creditor's agreement.

11. *See* appellant's brief at 25 n. 35.

12. *See, also, General Stores Corp. v. Shlensky,* 350 U.S. 462, 76 S.Ct. 516, 100 L.Ed. 550 (1956).

or stockholders to the extent that it deals with those individuals' concurrent role as unsecured creditors. Second, we must conclude, that the Bankruptcy Court has jurisdiction to impose certain restrictions on secured creditors during the period prior to confirmation, and can "deal with the rights of secured creditors" in a Chapter XI arrangement to the extent that those secured creditors voluntarily agree to the arrangement.

When a creditor is owed two debts, one of which is secured and the other is not, it cannot be seriously argued that the unsecured debt is excluded from participation in an arrangement because the creditor holds another debt which is secured. That case, however, is logically indistinguishable from the case of a secured creditor whose secured debt is secured by collateral less valuable than the full amount of the debt. When the value of the security is less than the full amount of the debt, the

> "secured" creditor is the holder of an unsecured debt for such sum as may be owing over and above the value of the security. The plan may deal with that unsecured debt, whether the plan is by way of settlement, satisfaction, or extension.

9 Collier on Bankruptcy ¶ 8.01 at 169 (14th ed. 1976). Thus, in *United States v. National Furniture Co.*, 348 F.2d 390 (8th Cir. 1965), the Small Business Administration was allowed to participate in a Chapter XI arrangement to the extent that the debt owed it exceeded the value of its collateral.[13] Accordingly, we must conclude that R.I.D.C. was entitled to participate in the arrangement as an unsecured creditor to the extent that the debt owed it by Sunnyhill exceeded the value of the inventory.

Participation of R.I.D.C. in the arrangement was not, however, limited to the extent that the debt owed it exceeded the value of the collateral. It is apparent from the terms of the arrangement that it reached the entirety of Sunnyhill's estate and eliminated the security interest of R.I. D.C. While it is clear that a bankruptcy court lacks jurisdiction under Chapter XI to *compel* a secured creditor to participate in an arrangement that alters his security interest, the present case raises the question of whether the court has jurisdiction to *allow* him to participate without sacrificing other legal rights.

As we pointed out in *In re Texas Consumer Finance Corp.*, 480 F.2d 1261 (5th Cir. 1973), the purpose of Chapter XI is to "insure continuation of the business under a self-determined arrangement."[14] The underlying theory is that the going concern value of the business is greater than its value if liquidated. In many cases foreclosure of security interests would hamper the ability of a business to continue to such an extent that it could no longer carry on normal business operations. In such a situation, it is in the interest of the unsecured creditors to work out an arrangement under which secured creditors receive compensation equal in value to their security interests in exchange for voluntarily participating in the plan.

In *Armstrong v. Alliance Trust Company*, 112 F.2d 114 (5th Cir. 1940), the debtor sought relief by composition of his debts under § 74 of the Bankruptcy Act of March 3, 1933, the predecessor provision to Chapter XI. Section 74 provided that "such extension or composition shall not reduce the amount of or impair the lien of any secured creditor, but shall affect only the time and method of its liquidation." We ruled that a secured creditor could not be compelled to reduce a secured debt, but "if the particular creditor so affected consents, the proposal can of course be confirmed."[15]

---

**13.** 348 F.2d at 392, 9 Collier ¶ 8.01 at 169. *See In re Everick Art Corp.*, 39 F.2d 765, 768 (2nd Cir. 1930). *Law Research Service, Inc. v. Crook*, 524 F.2d 301, 311 (2nd Cir. 1975).

**14.** 480 F.2d at 1266. *See S. E. C. v. United States Realty Improvement Co.*, 310 U.S. 434, 446, 451, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940).

**15.** 112 F.2d at 117. *See* Yacos, Secured Creditors and Chapter XI of the Bankruptcy Act, 44 J. of Natl. Conf. of Referees in Bankruptcy 29 (1970) (hereinafter cited as Yacos).

The facts in the present case are quite similar. R.I.D.C. was not compelled to sacrifice its security interests; it voluntarily did so, apparently in an attempt to maximize the value of Sunnyhill's estate and thus increase the amount of the debt that would be repaid.

In addition to serving the purpose of maximizing the value of the debtor's estate, allowing the secured creditors to voluntarily participate in an arrangement may protect the secured creditor from loss of value resulting from the lengthier proceedings that would be necessary if the bankruptcy court must pass upon the validity and the value of the security interest.[16] Section 314 of the Bankruptcy Act gives the bankruptcy court the power to restrain secured creditors. "The court may, . . . upon notice and for cause show, enjoin or stay until final decree any act or the commencement or continuation of any proceeding to enforce any lien upon the property of a debtor."[17] This provision may be invoked if the validity of a lien or the extent of the property covered is challenged. Allowing a secured creditor to voluntarily join in an arrangement may facilitate completion of the Chapter XI process by allowing compromise among the interested parties on these issues.[18]

We hold that, as in straight bankruptcy, the secured creditor has the option in a Chapter XI proceeding to prove its claim as a secured creditor and be given credit for the value of the security as well as a claim for the unsecured balance.[19] To limit the secured creditor to foreclosure followed by filing of a claim for the unsecured balance or surrender of the security followed by filing for the whole claim as an unsecured creditor would undermine the Chapter XI purpose of maintaining a viable business, when feasible, to benefit all creditors and the debtor.[20] If the business is worth more as a going concern than it would bring in liquidation, then it is also to the guarantor's advantage to allow this option since more of the debt will be paid by the debtor.[21]

We conclude that the bankruptcy court did have the jurisdiction to confirm an arrangement voluntarily entered into by R.I.D.C. which altered R.I.D.C.'s status as a secured creditor. The arrangement does not affect the responsibility of Sunnyhill's guarantors to make good on the unpaid portion of the guaranteed debts that remain after the arrangement has been completed.[22]

Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion.

---

**16.** *See, generally, Law Research Service, Inc. v. Crook*, 524 F.2d 301 (2nd Cir. 1975).

**17.** *See* Yacos at 29–30.

**18.** There is no reason to assume that a secured creditor would agree to an arrangement that would not maximize the total amount, secured and unsecured, that he would receive from the debtor. His interest is consistent with that of the guarantor; the more he collects from the debtor, the less he needs to collect from the guarantor.

**19.** *See In re Pennyrich Int'l, Inc.*, 473 F.2d 417, 422 (5th Cir. 1973); 3 Collier at ¶ 57.07[3] at 169; *cf. United States Natl. Bk. v. Chase Natl. Bk.*, 331 U.S. 28, 33–34, 67 S.Ct. 1041, 91 L.Ed. 1320 (1947).

**20.** *Compare New York Terminal Warehouse Co. v. Bullington*, 213 F.2d 340, 344 (5th Cir. 1954).

**21.** *See, also, Continental Illinois National Bk. & Trust Co. v. Chicago, Rock Island & Pacific Ry.*, 294 U.S. 648, 675–81, 55 S.Ct. 595, 79 L.Ed. 1110 (1935) (discussion of similar concerns under the Railroad Reorganization Act).

**22.** Since we conclude that the bankruptcy court had jurisdiction, it is unnecessary for us to reach the question of whether the creditor violated the guarantee agreement by joining a contractual composition.